749 A.2d 380 (2000)
330 N.J. Super. 206
STATE of New Jersey, Plaintiff-Respondent,
v.
Kelvin A. NELSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 24, 2000.
Decided April 18, 2000.
*381 Ivelisse Torres, Public Defender, for defendant-appellant (Barbara A. Hedeen, Assistant Deputy Public Defender, of counsel and on the brief).
Wayne J. Forrest, Somerset County Prosecutor, for plaintiff-respondent (Marina S. Peck, Assistant Prosecutor, of counsel and on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
In this appeal, we reverse defendant's conviction for possession of a controlled dangerous substance because the State failed to disclose, during discovery, that one of its trial witnesses, Erle Lovell, had previously been convicted of sexual assault and was placed on four years probation subject to the condition that he serve 364 days in the Somerset County Correctional Facility.
In a one-count indictment, defendant was charged with third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1). Lovell had been arrested with defendant, and was charged with the same offense.[1] According to the State's proofs at trial, on July 30, 1997, Somerville patrolman Thomas O'Donnell went to 2 West Main Street, Apartment 6, in Somerville based upon a complaint made by Armel Lashley regarding a dispute he was having with other persons that resided in the apartment building. When they got there, Lashley knocked on the door. An occupant, Margaret Stokes, opened the door. O'Donnell saw that the room was filled with smoke. He saw five persons in the room, including Lovell and defendant. Lovell was seated directly in front of him and had "what appear[ed] to be a homemade crack pipe in his hand, he was raising to his mouth". Defendant was one of the persons in the room. O'Donnell observed defendant make "a fast move to the left of the apartment towards the bathroom".
Based upon his observations, O'Donnell entered the apartment. He observed another "homemade pipe" on the stove. He also observed a small dish on the stove "with chunks and some white powder" which he believed "was probably crack cocaine". He also saw a spoon "with water and some chunks of the same white substance in the water". Finally, he saw a small box of baking soda on the counter which "is commonly used to cook the cocaine *382 to a more ... pure form". The apartment was described as a one room apartment. O'Donnell said he "wasn't really comfortable with [so many people] in a small room" and ordered two of the occupants, who did not appear to be engaged in the use of any of the controlled dangerous substances, to leave. He then arrested defendant, Stokes and Lovell. He transported defendant and Stokes to police headquarters in his patrol vehicle.
O'Donnell testified that in accordance with standard Somerville police procedure, at the beginning of his shift he had pulled out the rear seat of the patrol car to assure that contraband or weapons had not been left there from the prior shift. He found nothing. Furthermore, again in accordance with Somerville police procedure, he patted down defendant before placing him in the patrol car. Apparently, he found nothing during the pat-down. He handcuffed defendant and Stokes, with their hands behind their backs. He placed Stokes behind the driver's seat, and defendant behind the passenger seat.
Pursuant to consent given by Lovell, who was the actual tenant, other officers began to search the apartment. O'Donnell was asked by a Lieutenant "to remain for a short while". While O'Donnell was standing outside the car, he observed defendant "squirming and moving around inside the back seat". Also, while transporting defendant and Stokes to police headquarters, O'Donnell observed defendant continuing "to move about the back of the vehicle".
After defendant and Stokes were taken into police headquarters and placed in custody, O'Donnell went back to the vehicle and, again, pursuant to Somerville procedure, "checked the rear seat" and "just to the right of where [defendant's] hands are [sic] was a small, tiny plastic bag that had the white substance in there. It was later tested positive for cocaine". He found the bag in the area "where the bench seat meets the back of the seat", near the door.[2]
Lovell testified that defendant and Stokes were living with him. He said they did not pay rent but he permitted them to stay because they had nowhere to live and, in return, defendant supplied him with drugs. He said that when the police arrived he and defendant were "partying ... doing drugs". He identified the drugs as "crack cocaine" which had been supplied by defendant. He acknowledged that he had entered into a plea agreement which required him to "testify truthfully" against defendant in return for the State's recommendation for probation. He said that on July 30, 1997, defendant had brought the cocaine into the apartment in "little bags". He said defendant was "cooking" the cocaine.
On cross-examination, in response to a question as to whether the drugs affected Erle's "mental abilities that day", he responded that he "already have mental problem". He said he was on medication for depression. However, he denied that the drugs he had been using on the day of his arrest affected his ability to think clearly.
Defendant testified. He said he did not use narcotics and denied giving Lovell narcotics in exchange for a place to stay. He also denied purchasing any of the cocaine found in the apartment, and denied using any of that cocaine. He also denied leaving cocaine in the patrol car. He explained that the reason he was "squirming" in the back seat was because the handcuffs were extremely painful due to a prior fracture to his wrist which had necessitated surgical repair, including a bone graft from his hip. While testifying, defendant acknowledged he had previously been convicted of criminal contempt and terroristic threats in New Jersey and "resisting an officer with violence" in Florida.
*383 Moreover, he conceded he was still on probation for the New Jersey offenses.
The jury deliberated for portions of two days. During the course of its deliberations, the jury asked four separate questions, including a request for a readback of Lovell's testimony. Ultimately, as previously noted, the jury found defendant guilty.
Prior to sentence, defendant moved for "judgment of acquittal notwithstanding the verdict or in the alternative for a new trial". The bases of that application were defendant's contentions that (1) the evidence was insufficient to support a conviction beyond a reasonable doubt, coupled with counsel's contention that he should have requested separate jury verdicts regarding the cocaine found in the apartment, and the cocaine found in the car, and (2) the State should have supplied defense counsel with information regarding the nature and extent of Lovell's mental disabilities and medications he was taking prior to trial.
While defendant's motion was pending, the assistant prosecutor who tried the case, in preparing for Lovell's sentencing, reviewed the presentence report and discovered that Lovell had a prior conviction for sexual assault. The assistant prosecutor had been unaware of that fact when Lovell testified. She immediately advised defendant's attorney of Lovell's prior criminal record representing that "[a]ccording to Lovell's criminal history he has no prior indictable convictions and the State was unaware of any such convictions prior to or at the time of trial". Based upon that letter, defendant's attorney supplemented his pending motion seeking a new trial based upon the "newly discovered evidence".
The judge initially determined that there had been a Brady violation[3]. He further concluded that the non-disclosure of Lovell's prior conviction "could well undermine confidence in the verdict". However, in light of the age of Lovell's conviction, he requested briefs on the issue of the admissibility of the conviction with the understanding that if the conviction was admissible to impeach Lovell's credibility, defendant's conviction would be "reversed". The judge also observed that the offense that gave rise to Lovell's conviction occurred on March 21, 1981, but he was not arrested until August 12, 1989, and was not convicted until July 30, 1990. The judge raised the question as to whether the remoteness of Lovell's conviction should be measured from the date of his offense, or the date of his conviction. The judge ultimately concluded that Lovell's conviction in 1990, for an offense that occurred in 1981, would not have affected his credibility when he testified at trial in 1998. He observed that, in his opinion, Lovell was "a very unique witness. He... suffers from a number of impairments. And quite frankly, I think those impairments elevated the level of his credibility at trial". Accordingly, he denied the motion.
On this appeal, defendant raises the following arguments:
POINT I DEFENDANT'S MOTION FOR A NEW TRIAL SHOULD HAVE BEEN GRANTED BECAUSE THE BRADY VIOLATION INVOLVED MATERIAL EVIDENCE.
POINT II THE COURT'S JURY INSTRUCTION ON CONSTRUCTIVE POSSESSION WAS INCOMPLETE, FAILING TO CONFORM TO THE REQUIREMENTS OF STATE V. BROWN AND STATE V. SHIPP. (Not Raised Below).
POINT III DEFENDANT'S SENTENCE IS EXCESSIVE.
In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either *384 to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215, 218 (1963). The Brady rule applies even where defendant makes no formal request for Brady material. United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 351-52 (1976); State v. Martini, 160 N.J. 248, 268, 734 A.2d 257 (1999); State v. Knight, 145 N.J. 233, 245, 678 A.2d 642 (1996).
In order to establish a Brady violation, defendant must show that: (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material Martini, supra, 160 N.J. at 268, 734 A.2d 257.
Clearly, the first requirement has been satisfied. Although unintentionally, the prosecution failed to disclose to defendant Lovell's prior conviction. The trial prosecutor's lack of knowledge of the conviction is of no consequence. Awareness of the existence of a criminal record, which is peculiarly within the knowledge of law enforcement, is imputable to the trial prosecutor notwithstanding a lack of actual knowledge. Kyles v. Whitley, 514 U.S. 419, 437-38, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490, 508 (1995) (trial prosecutor has a duty to learn of any evidence favorable to defendant known to others acting on government's behalf); State v. Nelson, 155 N.J. 487, 498-500, 715 A.2d 281 (1998), cert. denied, 525 U.S. 1114, 119 S.Ct. 890, 142 L.Ed.2d 788, (1999)(lack of actual awareness by trial prosecutor does not relieve the State of its Brady obligations). The Brady disclosure rule applies to information of which the prosecution is actually or constructively aware. Ibid. We have no hesitancy in concluding that a trial prosecutor is constructively aware of the existence of a criminal record which is easily ascertainable, as it was in this case.
Moreover, a prior conviction of a State's witness, particularly one as important as Lovell in this case, is evidence favorable to the defense, thereby satisfying the second Brady requirement.
Next, we must consider whether the evidence was material to the defense, thereby satisfying the third Brady requirement. In determining whether evidence is sufficiently material to require its timely disclosure to defendant, the United States Supreme Court initially held that the standard for determining whether suppressed evidence is material depends on the specificity of defendant's initial request for the evidence in question. United States v. Agurs, supra, 427 U.S. at 104-12, 96 S.Ct. at 2398-2402, 49 L.Ed.2d at 350-55 (1976). In cases where a specific request was made, reversal was required if the suppressed evidence "might have affected the outcome of the trial". Id. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350. On the other hand, if only a general request had been made for Brady material or no request at all, reversal would only have been necessary if the non-disclosed evidence created a reasonable doubt that did not otherwise exist. Id. at 112, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. However, the Court subsequently abandoned that distinction and held that regardless of the specificity of defendant's request, evidence is material for Brady purposes "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different". United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985). Stated another way, the question is whether in the absence of the undisclosed evidence did the defendant receive a fair trial which is understood as a trial resulting in a verdict worthy of confidence. Kyles v. Whitley, supra, 514 U.S. at 434, 115 S.Ct. at 1566, 131 L.Ed.2d at 506; State v. Nelson, supra, 155 N.J. at 500, 715 A.2d 281. Therefore, in order to establish a "reasonable probability" of a different result, defendant need not show that it is more likely than not that he would have received a different verdict with the disclosed evidence. Kyles, supra, at 434, 115 S.Ct. at 1566, 131 L.Ed.2d at 506. Rather, *385 a "reasonable probability" of a different result is shown when the suppression of the evidence undermines confidence in the outcome of the trial. Ibid.; Bagley, supra, 473 U.S. at 678, 105 S.Ct. at 3381, 87 L.Ed.2d at 491; Martini, supra, 160 N.J. at 269,734 A.2d 257.
It is unclear whether our Supreme Court will apply Bagley`s unitary standard in all cases, or will apply Agurs` less demanding standard in cases where a specific request had been made. In Martini, supra, 160 N.J. at 269, n. 4, 734 A.2d 257, and Knight, supra, 145 N.J. at 247, 678 A.2d 642, the question was left open. However, in State v. Marshall, 148 N.J. 89, 156, 690 A.2d 1 (1997), cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997), the Court applied the Bagley test to all of the State's non-disclosures, including those that related to documents that defendant had specifically requested before trial, observing that it perceived no state-law basis on which to depart from Bagley`s unitary standard. Indeed, the Court has observed that Bagley`s unitary standard is simple to apply and "the differences in the standards may not be sufficiently substantial to justify retention of two different materiality tests". Knight, supra, 145 N.J. at 247, 678 A.2d 642. Here, defendant represents that he made a specific request for production of the criminal records of the State's witnesses. Although that request is not set forth in defendant's appendix, the State has never disputed that contention, and, accordingly, we accept it.
In any event, we readily conclude here that the withheld evidence of Lovell's prior conviction satisfies Bagley`s unitary standard, as well as the less demanding Agurs standard. In other words, there is a reasonable probability that the withheld evidence would have altered the jury's perspective of the case. After all, this was a credibility contest, the jury deliberated over two days, and only rendered its verdict after having a read-back of Lovell's testimony. Obviously, Lovell's testimony was deemed by the jury to be significant and critical.
We recognize that we must give deference to the trial judge's conclusion that the withheld evidence would not have affected the outcome of the trial. Having presided over the trial, ordinarily the judge is in a better position than we to make that determination. However, we also recognize that cross-examination is routinely regarded as the most effective means of challenging the credibility of a witness and thereby discovering the truth. State v. Silva, 131 N.J. 438, 444, 621 A.2d 17 (1993). One of the tools available to the cross-examiner in attempting to impeach the credibility of a witness is the witness' prior conviction of a crime. N.J.R.E. 609. We are concerned here not only with the failure to disclose Lovell's prior conviction, but also with the fact that defendant was impeached with his prior conviction of a crime. Disclosure of Lovell's prior conviction may have leveled the playing field. In Kyles, the Supreme Court vacated defendant's conviction by virtue of the failure of the prosecution to turn over to the defense, among other things, prior statements of prosecution witnesses which contained a number of inconsistencies. Kyles, supra, 514 U.S. at 442-45, 115 S.Ct. at 1569-71, 131 L.Ed.2d at 510-12. Noting that impeachment evidence, as well as exculpatory evidence, falls within the Brady rule, the United State Supreme Court vacated a conviction when the prosecutor failed to disclose evidence that the defense might have used to impeach the Government's witnesses by showing bias or interest. Bagley, supra, 473 U.S. at 676-84, 105 S.Ct. at 3380-85, 87 L.Ed.2d at 490-95. When the reliability of a witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility justifies a new trial, irrespective of the good faith or bad faith of the prosecution. Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972).
*386 Likewise, our Supreme Court has stated that "[s]uppression of evidence favorable or helpful to a defendant's cause, even when the evidence concerns only the credibility of a State's witness against defendant, denies him a fair trial and violates due process". State v. Vigliano, 50 N.J. 51,60,232 A.2d 129 (1967).
Although not decided in the context of a Brady violation, in State v. Taylor, 49 N.J. 440, 231 A.2d 212 (1967), our Supreme Court granted defendant's petition for post-conviction relief when defendant learned, after trial, that his co-defendant, who testified against him, had had conversations with the trial prosecutor who agreed to recommend leniency to the judge if he testified against defendant in accordance with his statement. When defense counsel cross-examined the witness and asked if he understood that his sentence could be less than a life sentence, the State's objection was sustained. The Court held that where one of the considerations for a plea is an agreement by a codefendant to testify truthfully for the State against another defendant in return for a recommendation of leniency, such promise or understanding should be fully, fairly and honestly disclosed when it comes into question at the trial. Id. at 456, 231 A.2d 212.
In State v. Spano, 69 N.J. 231, 353 A.2d 97 (1976), a principal State's witness had been arrested for possession of a controlled dangerous substance. Prior to her testimony, on the recommendation of the State, she was admitted into a supervisory treatment program under N.J.S.A. 24:21-27 which, if successfully concluded, would result in a dismissal of the charge. At trial, the judge sustained the State's objection when, on cross-examination, she was asked if she had been arrested for drug possession, stating, unless there was a record of conviction, the question was improper. Even though the trial prosecutor was unaware of the witness's status, the Court held that he had a responsibility to be aware of that fact and to disclose the conditional discharge to the court and to defense counsel when the inquiry was made. Id. at 235, 353 A.2d 97. Accordingly, defendant's conviction was reversed.
In State v. Rodriguez, 262 N.J.Super. 564, 621 A.2d 532 (App.Div.1993), we reversed defendant's conviction which was obtained, in part, due to the testimony of his co-defendant who, while testifying on his own behalf, implicated defendant. The trial prosecutor, as well as defendant, was unaware of the fact that the co-defendant had been arrested one week earlier on a charge of possession of a controlled dangerous substance with the intent to distribute. Moreover, the day after defendant was found guilty, the testifying co-defendant entered into a plea agreement with the State. Although no plea discussions had taken place earlier, the co-defendant's attorney conceded that he advised his client that it would be in his best interest to implicate defendant. We concluded that the State should have informed the defendant about his co-defendant's pending charge, and that failure deprived the defendant of the opportunity to cross-examine his co-defendant on the motivation for his testimony. Accordingly, we reversed his conviction.
Finally, in assessing the cumulative effect of multiple instances of non-disclosure by the State, our Supreme Court has held that the suppression of evidence that could have been used to impeach the State's only eyewitness necessitated reversal. State v. Knight, supra, 145 N.J. at 247-48, 678 A.2d 642. In urging the jury to find the witness credible, the assistant prosecutor had argued that the witness had "absolutely no reason to tell you anything but the truth". Prior to trial, the witness had pled guilty to a charge of possession of cocaine. The plea agreement called for a jail term of up to 364 days. The State failed to inform the defendant that at the witness' sentencing hearing a representative from the prosecutor's office told the sentencing judge that the witness was cooperating with the State in a murder investigation *387 and had enabled the State to secure a warrant for defendant's arrest. The witness was sentenced to time served, plus a small fine. The Court concluded that had counsel known these facts, the ability to impeach the witness' credibility would have been significantly enhanced and, accordingly, reversed defendant's conviction.
Our research has failed to uncover any case in New Jersey considering the impact of the State's failure to disclose to the defense prior criminal convictions of a State's proposed witness. Indeed, R. 3:13-3(c)(7) requires disclosure, during discovery, of any relevant record of prior convictions of persons whom the State knows has relevant evidence or information regarding the crime. In this credibility contest, Lovell had equal access and opportunity to possess the controlled dangerous substances. In those circumstances, we cannot, with any degree of confidence, conclude that defendant's inability to cross-examine Lovell regarding his prior conviction did not affect the outcome of these proceedings. This is particularly so in light of the critical nature of Lovell's testimony, coupled with facts that defendant was confronted on cross-examination with his prior convictions, and the length of the jury's deliberations, including its request for a read-back of Lovell's testimony. Under these circumstances, we cannot conclude that the trial resulted in a verdict worthy of confidence.
Although not necessary for our decision, for the sake of completeness, we have also considered defendant's contention that his conviction must be reversed because the State withheld evidence of Lovell's "mental condition". The simple answer to that contention is that there is no evidence that the State was aware, actually or constructively, of any mental impairment of Lovell. If evidence of an impairment was obvious, it was equally obvious to defendant. In the absence of evidence that the State was aware of an impairment, it cannot be held that the evidence was suppressed by the prosecution. Accordingly, the first Brady factor is not present. Moreover, the evidence was heard by the jury since Lovell testified that he was on medication for depression. Defendant has not, on this appeal, established that the evidence would have been favorable to him. There has been no showing that Lovell's condition affected his ability to perceive, recall or truthfully relate. Of course, on retrial, defendant may seek to establish that Lovell is not competent to testify, State v. Butler, 27 N.J. 560, 603-05, 143 A.2d 530 (1958), and that his condition or medication affected his ability to perceive, recall or relate. State v. Franklin, 52 N.J. 386, 399, 245 A.2d 356 (1968); State v. Johnson, 216 N.J.Super. 588, 603, 524 A.2d 826 (App.Div.1987), and all information obtained by the State on this issue will become discoverable.
This disposition renders moot the remaining applicable issues in the case.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] Lovell was indicted separately, however.
[2] The State police laboratory report, which was admitted into evidence without objection, revealed that all the substances analyzed tested positive for cocaine.
[3] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).