**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3843-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

TURI REDDICK, a/k/a
LEESHONE REDDICK,

     Defendant-Appellant.

_____

          Argued March 8, 2021 – Decided April 20, 2021

          Before Judges Hoffman and Smith.

          On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 02-05-0632.

          Steven E. Braun argued the cause for appellant.

          Milton S. Leibowitz, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Lyndsay V. Ruotolo, Acting Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the brief).

PER CURIAM

Defendant Turi Reddick appeals from a March 26, 2019 Law Division order denying his post-conviction motion for a new trial based on an alleged Brady[1] violation. We affirm.

I.

Having outlined the facts underlying defendant's conviction in our prior opinion affirming the conviction on direct appeal, State v. Reddick (Reddick I), No. A-4073-03 (App. Div. Nov. 2, 2006) (slip op.), we need only summarize the facts relevant to this appeal.

On February 9, 2002, defendant and his two co-defendants, Shane Burns and Shakore "Chubbs" Collins, broke into a home in Roselle, intending to rob a drug dealer who lived there. During the break-in, one of the robbers shot Mary Lou Nolan, who lived in the home, with a shotgun from an approximate distance of one foot. She later died from the gunshot wound.

Roselle police arrested defendant on February 13, 2002. After receiving Miranda[2] warnings, defendant provided a statement to police whereby he admitted that he and his co-defendants plotted to rob the home, but did not intend to hurt anyone. Defendant provided his "role was 'to hold the shotgun and scare

_____

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

them[,]'" while "Burns was '[t]o get the money' and Collins was to 'keep anyone from getting to the phone.'" Reddick I, slip op. at 6 (second alteration in original). Defendant described Collins ringing the doorbell, and when Nolan cracked the door open, defendant stuck the shotgun "inside the door to prevent her from closing it." Ibid. According to defendant, a struggle ensued between him and Nolan, during which Nolan grabbed the barrel of the shotgun. "Defendant's finger was on the trigger and a shot was fired. Then the men ran to the car." Id. at 7.

Subsequently, in May 2002, a Union County grand jury returned an indictment charging defendant, Burns, and Collins with first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a) (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two);[3] first-degree felony murder, N.J.S.A. 2C:11-3(a)(3) (count three); second-degree possession of a shotgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four); third-degree unlawful possession of a shotgun, N.J.S.A. 2C:39-5(c)(1) (count five); and third-degree unlawful possession of a loaded

---

[3] Evidently, count two was reduced from first-degree to second-degree robbery at some point before the trial of each co-defendant, as all three were convicted of second-degree robbery, without indication that this was a lesser-included offense. See Reddick I, slip op. at 1; State v. Burns (Burns I), No. A-4696-03 (App. Div. Nov. 2, 2006) (slip op. at 1); State v. Collins (Collins I), No. A-4677-03 (App. Div. Nov. 2, 2006) (slip op. at 1).

shotgun, N.J.S.A. 2C:39-5(c)(2) (count six). The three co-defendants were tried separately.

In January 2003, before defendant's trial, the court held a Miranda hearing concerning defendant's statement to police following his arrest. See Reddick v. Warren, No. 12-7875, 2016 U.S. Dist. LEXIS 321, at *7-11 (D.N.J. Jan. 4, 2016). Following the hearing, the court denied defendant's motion to suppress the statement and found defendant intelligently, knowingly, and voluntarily waived his Miranda rights after receiving proper warning from police. At defendant's trial, which took place in June 2003, one of the officers who elicited defendant's statement read the statement to the jury.

Witness Typhic Phipps, Burns' girlfriend, also testified at defendant's trial. She recounted that defendant and Burns showed up at her house after the shooting, where Burns "said to defendant, 'it wasn't supposed to go down like that.'" Reddick I, slip op. at 7. Defendant responded by stating, the "'gun was too big for me to hold'" and "demonstrated, as if holding an object pointing it toward the ground." Ibid. Defendant "also said, 'Chubbs froze up.'" Ibid.

On June 13, 2003, the jury found defendant guilty of counts two, three, four, and five, and of the lesser included offense of second-degree reckless manslaughter, N.J.S.A. 2C:11-4(b), as to count one. They found defendant not

A-3843-18

guilty of count six. The sentencing judge merged counts one, two, and four into count three for sentencing purposes, and then imposed a thirty-five-year term of imprisonment with a thirty-year parole ineligibility period and five years of parole supervision under the No Early Release Act (NERA). On count five, the court imposed a five-year sentence to run consecutive to count three.

We affirmed defendant's conviction,[4] Id. at 28, and our Supreme Court denied defendant's petition for certification, State v. Reddick, 191 N.J. 317 (2007). In June 2008, defendant filed a petition for post-conviction relief, which the trial court denied. We affirmed, Reddick II, slip op. at 8, and the Supreme Court denied defendant's petition for certification. State v. Reddick, 212 N.J. 288 (2012). In December 2012, defendant filed a habeas corpus petition in federal court, which the District Court of New Jersey denied in January 2016. Reddick v. Warren, No. 12-7875, 2016 U.S. Dist. LEXIS 321, at *67 (D.N.J. Jan. 4, 2016).

While discussing his case in the prison library in August 2017, defendant claims he learned from another inmate, Khalif James, that defendant's co-

---

[4] While affirming defendant's conviction, we vacated the sentence imposed on count five and remanded for resentencing. Reddick I, slip op. at 28. On remand, the trial court again imposed a consecutive five-year term. Reddick II, slip op. at 2.

defendant, Shane Burns, had worked with Linden[5] police as an informant in 1997. Defendant obtained transcripts from James' <u>Miranda</u> hearing and trial, which revealed Burns had worked with a Linden police detective voluntarily in 1997, providing information about criminals in exchange for leniency. While defendant did not include these transcripts in the record on appeal, our decision on James' direct appeal explicitly identified Burns as a police informant. <u>See</u> <u>State v. James</u>, 346 N.J. Super. 441, 450 (App. Div. 2002). Specifically, our opinion stated:

> On January 28, 1997, Shane Burns, a police informant who was also a friend of [James], convinced [James] to turn himself in to the police. At the station, in the presence of Burns, [James] invoked his right to counsel. Burns spoke to Linden Detective Salvator Bivona who told him to go back and speak to [James] and convince him to give a statement. Ultimately, Burns prevailed upon [James] to give a statement without his lawyer, maintaining that the police would go easy on [James] if he gave a statement. In addition, Burns vouched for Bivona's trustworthiness based on the help the detective had given him in the past. [James] then told Burns that he had given his gun to Jackson. Ultimately, the police were able to retrieve the gun.
>
> [<u>Ibid.</u>]

---

[5] The city of Linden is in Union County.

In May 2018, defendant filed a <u>Rule</u> 3:22-10(b) motion for a new trial based on his discovery that Burns had once been a police informant. In his certification accompanying this motion, defendant asserted, "Had I known that Shane Burns was an informant when I was arrested and questioned, I would have told the truth. I would have told the arresting detectives that Shane Burns was the one who killed Ms. Nolan."

However, defendant also certified that he "considered telling them I did the crime to stop Shane Burns from getting the death penalty," but became scared and instead "told them I did not know what they were talking about." According to defendant, he ultimately provided his statement after detectives showed him the incriminating statements from his co-defendants and Phipps and after the detectives threatened to jail the mother of defendant's son and have child services take away his son. "At that point," defendant "had no choice but to lie and say [he] did it."

The motion judge held a hearing on defendant's motion on March 26, 2019. During oral argument, the motion judge acknowledged that the defense argued its motion for a new trial was based on a "<u>Brady</u> violation," while the "State couche[d] it as a newly discovered evidence" motion. The motion judge explained her understanding of the motion:

> [B]asically . . . defendant argues that he lied or took responsibility when he confessed to the police back in 2002[,] admitting he was the shooter in this matter[,] because his codefendant, Mr. Burns[,] asked or coerced him to take the blame because Mr. Burns faced . . . the death penalty . . . . And [defendant] now claims that it was Burns and not himself that was the shooter.

During the hearing, defendant's attorney argued had the State turned over information detailing Burns' informant activity, defendant could have used it to bolster his argument that his confession was not voluntary. Further, in addition to showing defendant made his statement in response to the detectives' threats to defendant's family, defendant's attorney contended defendant could also have highlighted how defendant's mistaken concern for Burns inspired defendant's statement and how Burns' influence shaped law enforcement's view of the case. Defendant's attorney asserted this would have been crucial because defendant's statement "provided the bulk of the evidence against him" and because defendant may have received a more lenient sentence by raising further doubt as to the veracity of his confession.

The motion judge denied defendant's motion, first analyzing it under the newly discovered evidence standard. The judge found that defendant learning that Burns was an informant in James' case was not new evidence based on a line in defendant's certification that provided, before James told defendant about

A-3843-18

his case, defendant said to James: "I told [James] I lied; I didn't do it and his police informant friend Shane [Burns] set me up." The judge determined this indicated defendant already knew Burns was a police informant years before ever talking to James about his case.

Additionally, since defendant previously challenged the voluntariness of his statement at trial and in his prior PCR, the motion judge found defendant could have argued he made the confession to protect Burns, even without knowing Burns was an informant. The judge also concluded this information was not material because Burns being an informant was not the reason defendant gave his confession, prior judges already assessed and confirmed the voluntariness of defendant's confession earlier in this litigation, and defendant possessing this information would not have changed the jury's verdict in this case, given the other evidence against him.

At the end of her oral decision, the motion judge noted a new trial was likewise not warranted under the Brady framework. The judge indicated the second and third Brady elements were not met because

> there's no reasonable probability that had defendant known that Mr. Burns had assisted police in the past, would have changed anything because it's not why he confessed. And it was irrelevant to this case. There is . . . nothing in the record that shows that Mr. Burns was acting as an informant in this case. Maybe he did assist

five years earlier at some point in Khalif James' matter. But it is irrelevant. It is not favorable because it had nothing to do with the confession in this case.

[Ibid.]

On the day of the hearing, the motion judge entered an accompanying written order denying defendant's motion. This appeal followed, with defendant presenting the following points of argument:

POINT I

DEFENDANT IS ENTITLED TO A NEW TRIAL ON THE BASIS OF NEWLY DISCOVERED EVIDENCE BECAUSE OF THE MISCONDUCT OF THE PROSECUTOR IN FAILING TO APPRISE THE DEFENSE THAT WHEN DEFENDANT PROVIDED HIS CONFESSION, CO-DEFENDANT BURNS WAS A POLICE AGENT

. . . .

POINT II

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ADJUDICATED THE MERITS OF DEFENDANT'S MOTION FOR A NEW TRIAL BY USING THE WRONG LEGAL STANDARD. THAT IS, IT USED THE STANDARD FOR A GENERAL MOTION FOR A NEW TRIAL ON THE BASIS OF NEWLY DISCOVERED EVIDENCE INSTEAD OF THE CORRECT STANDARD WHEN A BRADY VIOLATION IS ALLEGED

. . . .

POINT III

THE TRIAL COURT IMPROPERLY TREATED THE
MOTION AS IF IT WERE AN ATTEMPT TO RE-
LITIGATE THE MIRANDA AND PRIOR POST-
CONVICTION RELIEF HEARINGS[.]

II.

The State has a "constitutional obligation to provide criminal defendants with exculpatory evidence in the State's possession[.]" State v. Marshall, 148 N.J. 89, 154 (1997). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." State v. Knight, 145 N.J. 233, 245 (1996) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). In order to make a Brady claim, a defendant must show three criteria: "(1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268-69 (1999) (citing Moore v. Illinois, 408 U.S. 786, 794-95 (1972)).

As to the first factor, the "disclosure rule applies to information of which the prosecution is actually or constructively aware." State v. Nelson, 330 N.J. Super. 206, 213 (App. Div. 1998) (citing Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)). The lack of actual awareness does not relieve the State of its Brady

11

obligations because the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf. Kyles, 514 U.S. at 437-38. See also State v. Nelson, 155 N.J. 487, 499 (1998).

The second Brady factor is often presumed and few courts have considered exactly what must be shown in order to establish that withheld evidence is favorable to the defendant. Evidence found to be favorable has generally involved information that impeaches the testimony of a government witness. See State v. Henries, 306 N.J. Super. 512, 533 (App. Div. 1997). Favorability is not limited to impeachment, however, and it has been recognized in cases where evidence simply bolsters a defendant's claims. See Nelson, 155 N.J. at 497.

The third Brady factor involves the materiality of the evidence that was withheld. "[E]vidence is material for Brady purposes 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Marshall, 148 N.J. at 156 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Nelson, 155 N.J. at 500 (quoting Bagley, 473 U.S. at 682). As our Supreme Court has stated:

"[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." Rather, the question is whether in the absence of the undisclosed evidence the defendant received a fair trial, "understood as a trial resulting in a verdict worthy of confidence."

[Ibid. (alteration in original) (citation omitted) (quoting Kyles, 514 U.S. at 434).]

In applying the materiality test "where a conviction has followed a full trial, we assess the strength of the State's case, and determine whether introduction of the suppressed evidence would probably have changed the jury's verdict." State v. Parsons, 341 N.J. Super. 448, 455 (App. Div. 2001) (citation omitted).

Whether non-disclosure of evidence violates Brady is a mixed question of law and fact, where the lower court's decision concerning the materiality of the evidence merits deference. State v. Marshall, 148 N.J. 89, 185-86 (1997). We do not defer, however, where the trial court did not analyze the claim under the correct legal standard. Id. at 185.

Defendant argues the motion judge applied the wrong legal standard when evaluating his new trial motion. He contends the judge incorrectly employed the more rigorous standard for a new trial motion premised on newly discovered evidence, rather than one premised on a Brady violation. In turn, he argues that

13

he satisfied the three elements necessary to establish a <u>Brady</u> claim, and therefore, the motion judge erred in denying his motion for a new trial.

"[A] new trial analysis premised upon a <u>Brady</u> violation and a new trial analysis premised upon newly discovered evidence, are different[.]'" <u>Henries</u>, 306 N.J. Super. at 534 (quoting <u>State v. Carter</u>, 85 N.J. 300, 314 (1981)). The latter requires the defendant establish the evidence "was 'not discoverable by reasonable diligence'" before trial. <u>State v. Ways</u>, 180 N.J. 171, 187 (2004) (quoting <u>Carter</u>, 85 N.J. at 314). <u>See also</u> <u>Henries</u>, 306 N.J. Super. at 534.

Defendant correctly points out that that it is more difficult for a defendant to obtain a new trial based on a newly discovered evidence than it is based on a <u>Brady</u> violation. However, the distinction between the two standards is irrelevant here because the motion judge considered defendant's motion under both standards, albeit providing a more detailed analysis under the newly discovered evidence standard. In our review of the motion judge's decision, we are mindful of the obligation to assess defendant's <u>Brady</u> claim under the correct legal standard. We nevertheless conclude that defendant failed to establish a <u>Brady</u> violation because the evidence concerning Burns' 1997 informant activities was not material to defendant's conviction or sentence.

We disagree with the motion judge's determination that defendant failed to meet the second Brady element, i.e., that this evidence is not favorable to defendant. The evidence showing Burns was a police informant in Union County five years before defendant and Burns were arrested and prosecuted, even if of minor value, is favorable to defendant because it raises questions as to the degree of defendant's and Burns' culpability and role in the robbery-murder and the police's potential bias in favor of Burns. We also note that the first Brady element is satisfied because the Union County prosecutor's office had constructive knowledge of this evidence, having earlier prosecuted James' case where Burns police informant status was revealed.

In any event, we reject defendant's assertions that the evidence of Burns' informant activities was material to defendant's conviction and sentence. Defendant insists his possession of this evidence concerning Burns would have enabled him to challenge the voluntariness and veracity of his statement admitting he shot Nolan because it supports defendant's theory that the police were biased in favor of Burns and sought to pin defendant as the shooter. Essentially, defendant contends there is a reasonable probability that the result of his trial would have been different because he would have used the evidence

to cast doubt on his admission to being the shooter while suggesting Burns actually pulled the trigger.

At the outset, we find that defendant would not have been able to rebut the evidence showing he shot Nolan if the evidence in question had been disclosed before trial. Defendant's statement and Phipps' testimony amount to much stronger evidence than the evidence showing Burns worked with a different Union County police department five years before the charged robbery-murder. And nothing in the record suggests the Roselle police afforded Burns any favorable treatment or even knew of his informant activities with the Linden police department, especially given that Burns was prosecuted on the same charges as defendant. Thus, even if defendant attempted to impeach the police who testified against him or call Burns as a hostile witness using the Burns informant evidence, defendant would not have successfully persuaded the jury that he did not shoot Nolan.

Additionally, accomplice liability reveals a major flaw in defendant's argument. Pursuant to N.J.S.A. 2C:2-6(c), "an accomplice to a crime is legally responsible for 'the conduct' of the person who actually commits the crime" if the accomplice acts "'[w]ith the purpose of promoting or facilitating the commission of the offense'" and "'[a]ids or agrees or attempts to aid such other

person in planning or committing it[.]'" State v. Whitaker, 200 N.J. 444, 457 (2009) (third alteration in original) (quoting N.J.S.A. 2C:2-6(c)). "An accomplice is . . . guilty of the same crime committed by the principal if he shares the same criminal state of mind as the principal" and "'at least indirectly participate[s] in the commission of the criminal act.'" Id. at 458-59 (quoting State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993)).

Defendant here does not deny planning and participating in the robbery which resulted in Nolan's killing. Thus, even if defendant successfully cast doubt on his identity as the shooter and showed Burns was the principal who shot Nolan, defendant would still be liable as an accomplice to Burns. The same would be true even if police biasedly sought to pin defendant, rather than Burns, as the shooter. Tellingly, under the theory that defendant was the shooter and

they were accomplices, both Burns[6] and Collins[7] were convicted on the essentially same charges as defendant. We perceive no reasonable probability that defendant's participation in the robbery-murder, even if not the shooter, would not give rise to accomplice liability. In short, defendant's conviction did not depend on him being the literal shooter; he would have been convicted all the same even if he unequivocally showed Burns shot Nolan.

We also find that the suppressed evidence here would not have helped defendant challenge the voluntariness of his statement to police. "[C]oercive police activity is a necessary predicate to [a] finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." State v. Smith, 307 N.J. Super. 1, 10 (App. Div. 1997) (alteration in original) (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). The

---

[6] See Burns I, slip op. at 1. Burns was initially convicted on all six charges contained in the indictment. Ibid. However, on appeal, we reversed Burns' convictions on counts one, two, and three due to an improper accomplice liability jury charge. Id. at 3. We affirmed Burns' conviction on counts four through six. Id. at 19. On remand, pursuant to a negotiated plea agreement, Burns pled guilty to first-degree aggravated manslaughter (count one) while counts two and three were dismissed. See State v. Burns (Burns II), No. A-0917-14 (App. Div. September 1, 2016) (slip op. at 3).

[7] See Collins I, slip op. at 1. Collins was convicted of counts two, four, five, and, like defendant, of first-degree reckless manslaughter as a lesser included offense as to count one. Ibid. He was acquitted of counts three and six. Ibid.

voluntariness inquiry "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" Id. at 10-11 (quoting Connelly, 479 U.S. at 170). The evidence in question does not show Burns was a police informant in defendant's case or that Burns acted on behalf of the police in convincing defendant to confess to being the shooter. Even if Burns did convince defendant to claim responsibility for shooting Nolan, it cannot be said that police conduct coerced the statement from defendant. The evidence of Burns' prior informant activities is wholly irrelevant to inquiry into the voluntariness of defendant's confession.

Lastly, we reject defendant's argument that there is a reasonable probability he would have received a lighter sentence had the evidence in question been properly turned over before trial. We reiterate that, due to the weight of the evidence against him, we do not think defendant would have convinced the jury or trial court that someone else shot Nolan. This evidence therefore would have no bearing on defendant's sentence.

We also note defendant likely would have received a similar sentence even if he proved he were only an accomplice. Indeed Burns, as an accomplice, initially received a sixty-year sentence after being convicted on all six counts in

19

the indictment.[8]   After his convictions on counts one through three were reversed, his case was remanded, and he pled guilty to count one, Burns was sentenced to an aggregate twenty-nine-year term.  State v. Burns (Burns II), No. A-0917-14 (App. Div. September 1, 2016) (slip op. at 4).  Collins received a seventeen year sentence count two, count five, and the lesser included to count one.[9]

Even if Burns were the shooter and defendant an accomplice, defendant's sentence would have more closely resembled Burns' than Collins because defendant admitted to planning the robbery with Burns, whereas Collins' confession to police and trial testimony indicated that he did not plan the robbery and only went along with them after they called for a ride.  State v. Collins (Collins I), No. A-4677-03 (App. Div. Nov. 2, 2006) (slip op. at 7-11). Defendant also did not plead guilty, so him receiving a greater sentence than Burns' remanded sentence is not uncommon.

---

[8]  Burns II, slip op. at 3.  The sentencing court "merged counts one, two, four, five, and six into count three" and then imposed the sixty-year term.  Burns I, slip op. at 1.

[9]  State v. Collins (Collins II), No. A-0895-10 (App. Div. April 30, 2012) (slip op. at 2).  While Collins was also convicted on count four, the trial court dismissed this charge before sentencing Collins.

The evidence of Burns' 1997 informant activities does not undermine our confidence in the outcome of defendant's case, and we are convinced there is no reasonable probability that the disclosure of this information would have impacted defendant's conviction or sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3843-18