**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3394-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ANDREW L. RHETT,

    Defendant-Appellant.

_____

Submitted January 21, 2026 – Decided March 30, 2026

Before Judges Sumners and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 88-03-0334.

Jennifer N. Sellitti, Public Defender, attorney for appellant (David J. Reich, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Robert A. Polis II, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Andrew L. Rhett appeals a March 18, 2024 Law Division order denying him post-conviction relief (PCR) without an evidentiary hearing on procedural grounds. After reviewing the record and the relevant law we conclude that the PCR court misapplied the law but affirm nonetheless on different grounds.[1]

## I.

Defendant was convicted of the first-degree robbery and second-degree aggravated assault of Penny Ruddish and her boyfriend Wayne Durham in June 1989. See State v. Rhett, No. A-6047-88 (App. Div. May 9, 1991) (slip op. at 1–3) (Rhett I).

At trial, Durham and Ruddish testified that defendant approached them to ask for a ride while they were sitting in Ruddish's car in the parking lot of a Bridgeton store at night. Though it was dark, both witnesses testified that the store's lighting illuminated the area. Durham testified that he had seen the defendant "[o]nce in a while downtown," and that defendant approached him on the passenger side wearing a "beanie" and "a hooded shirt" with "an orange vest." Ruddish and Durham testified that after they agreed to give defendant a

---

[1] "[W]e affirm or reverse judgments and orders, not reasons." State v. Maples, 346 N.J. Super. 408, 417 (App. Div. 2002).

A-3394-23

ride, he sat in the back seat of their two-door car. Durham testified that though defendant was sitting in the back, he sat in the middle and was almost in front of them. He further testified that they talked during the short car ride and was able to see defendant's face while talking to him. Upon letting defendant out of the car as he requested, Durham, sitting in the front passenger seat, pulled his seat-back forward to aid defendant's exit from the rear seat. As Durham engaged the seat-back lever, defendant pushed the seat forward, pinning Durham to the windshield. Defendant then struck Durham on the left temple with a sharp object and attempted to steal Ruddish's purse but failed. Defendant severely cut Ruddish's face. Ruddish stated that during the struggle she was so close to defendant she could have kissed him. Defendant then ran away.

Later that night, Durham looked through hundreds of photographs at the police station to identify the assailant. At one point, Durham picked a photograph that resembled defendant, but was not, and offered it to Bridgeton Police Detective Greg Everingham to "give him an idea of what [they] were looking for." Based on this and Durham's description of what the assailant was wearing, Everingham testified that he recalled seeing the assailant earlier that day and began looking for a photo of who he had recalled seeing in a different file. Durham eventually identified defendant as the assailant from a photo array.

3

Ten days after the incident, Reddish went to the police station and identified defendant from a photo array containing the same photograph of defendant that Durham had previously selected.

At the time of trial, Durham had three convictions on his record but only two were disclosed by the State. On direct examination, the prosecutor asked him about a 1983 conviction for burglary and theft and a 1985 conviction for possession of controlled dangerous substances (CDS). On cross-examination, the only mention of Durham's convictions was the following colloquy:

> [COUNSEL]: Mr. Durham, have you ever been convicted of crimes before?
>
> [DURHAM]: Yes ma'am.

Durham's criminal record was not mentioned during the defense's summation. Instead, the defense called into question Ruddish and Durham's ability to identify and suggested their identifications were tainted.

The jury found defendant guilty. He was later sentenced to an extended term of life with twenty-five years of parole ineligibility for robbery and a consecutive twenty-year extended term sentence with ten years of parole ineligibility for aggravated assault.

Defendant appealed and we affirmed the conviction but remanded for resentencing, noting the State's concession that "the imposition of two extended

4

terms was illegal." Rhett I, slip op. at 12.  The trial court, on remand, reduced the aggravated assault sentence to ten years with five years of parole ineligibility.  Defendant's petition for certification was denied.  State v. Rhett, 126 N.J. 389 (1991).

In 1992, defendant's motion for PCR was denied on procedural and substantive grounds.  We affirmed.  State v. Rhett (Rhett II), No. A-2726-92 (App. Div. Aug. 23, 1994) (slip op. at 2), certif. denied, 140 N.J. 275 (1995).

In 2004, defendant's motion for reconsideration of his sentence was denied.  We affirmed.  State v. Rhett (Rhett III), No. A-2103-04 (App. Div. June 28, 2007) (slip op. at 2), certif. denied, 192 N.J. 481 (2007).

In 2014, 2020, and 2021, motions to have his sentence reconsidered, suspended, or corrected, respectively, were denied by the trial court.  Defendant appealed the 2021 order denying his motion to correct an illegal sentence.  State v. Rhett (Rhett IV), No. A-3018-20 (App. Div. Nov. 23, 2022) (slip op. at 2).

While the 2021 motion was pending before the trial court, defendant moved on August 11, 2021, for a new trial after discovering that Durham had a third conviction at the time of the trial and claimed the State's non-disclosure constituted a Brady[2] violation.  Defendant learned that Durham, in 1986, pled

---

[2]  373 U.S. 83 (1963).

guilty to a possession-of-weapons-by-a-convicted-felon charge and was sentenced to one year of probation. On March 22, 2022, the trial court dismissed the new trial motion without prejudice pending the appeal of his denied motion to correct an illegal sentence.

On November 23, 2022, we affirmed the denial of defendant's illegal sentence motion. Rhett IV, slip op. at 3.

In a December 5, 2022 letter, defendant advised the trial court that our court denied his appeal, which he would not appeal to the Supreme Court. Defendant thus requested reopening of his PCR petition — his new trial motion. Defendant submitted supplemental briefing reiterating his Brady violation claim and claiming his trial counsel was ineffective for failing to verify Durham's criminal record.

On March 18, 2024, the PCR court denied defendant's PCR petition finding it was time-barred.

II.

Before us, defendant raises the following arguments:

POINT I

THE COURT ERRED IN HOLDING THAT RHETT'S APPLICATION WAS UNTIMELY.

6

POINT II

RHETT IS ENTITLED TO A NEW TRIAL IN VIEW OF THE NEWLY DISCOVERED EVIDENCE THAT A BRADY VIOLATION OCCURRED BY VIRTUE OF THE STATE'S FAILURE TO DISCLOSE A PRIOR CRIMINAL CONVICTION OF THE STATE'S MOST IMPORTANT WITNESS.

POINT III

IN THE EVENT THIS COURT DETERMINES RHETT IS NOT ENTITLED TO A NEW TRIAL BASED ON HIS NEWLY DISCOVERED EVIDENCE CLAIM, IT SHOULD GRANT HIM AN EVIDENTIARY HEARING CONCERNING HIS CLAIM OF INEFFECTIVE ASSISTANCE.

We review the PCR court's legal conclusions de novo, State v. Harris, 181 N.J. 391, 419 (2004), and first address the threshold issue of whether it erred in treating defendant's claim as a petition for PCR rather than a motion for a new trial pursuant to Rule 3:20-2. While defendant characterized his self-represented brief filed on August 11, 2021, as a motion for a new trial, the criminal case management classified it as a PCR petition and the PCR court designated it as deficient, ordering counsel to be assigned to defendant. With appointed counsel, defendant then submitted an amended petition for PCR on February 28, 2022, explaining that "[a]lthough [d]efendant filed his submission as a [self-represented] motion for a new trial, it [was], in effect, a petition for [PCR]

pursuant to [Rule] 3.22 et seq." Further, defendant's December 5, 2022 letter to the PCR court stated that he would like "to re-open his petition for [PCR]," and defendant's counseled brief upon reopening was labeled as "petitioner's brief to support petition for [PCR] and supplement to petitioner's [self-represented] petition for [PCR]." Accordingly, the instant motion was brought as a petition for PCR and therefore PCR procedural rules apply.

There are specific procedural hurdles a defendant faces to pursue PCR. Rule 3:22-12 lays out the general time limitations for PCR relief. Rule 3:22-12(a) bars first petitions for PCR filed more than five years after the date of entry of the judgment of conviction that is being challenged unless the defendant can show excusable neglect, R. 3:22-12(a)(1), or "it alleges a claim for relief as set forth in paragraph (a)(2)(A) or paragraph (a)(2)(B) of this rule and is filed within the one-year period set forth in paragraph (a)(2) of this rule," R. 3:22-12(a)(1)(B). Paragraph (a)(2) states that second or subsequent petitions for PCR cannot be filed more than one year after the latest of:

> (B) the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence; or

> (C) the date of the denial of the first or subsequent application for [PCR] where ineffective assistance of

counsel that represented the defendant on the first or subsequent application for [PCR] is being alleged.

[R. 3:22-12(a)(2)(B) and (C).]

Rule 3:22-4(b) further clarifies that second or subsequent petitions for PCR shall be dismissed unless:

> (1) it is timely under R. 3:22-12(a)(2); and
>
> (2) it alleges on its face either:
>
> . . . .
>
> (B) that the factual predicate for the relief sought could not have been discovered earlier through the exercise of reasonable diligence, and the facts underlying the ground for relief, if proven and viewed in light of the evidence as a whole, would raise a reasonable probability that the relief sought would be granted; or
>
> (C) that the petition alleges a prima facie case of ineffective assistance of counsel that represented the defendant on the first or subsequent application for [PCR].

Rule 3:22-4(a), on the other hand, bars first petitions for PCR where the grounds for relief were not raised on direct appeal unless "the ground[s] for relief not previously asserted could not reasonably have been raised in any prior proceeding." The rule then explains that "[a] ground could not reasonably have been raised in a prior proceeding only if defendant shows that the factual predicate for that ground could not have been discovered earlier through the

9

exercise of reasonable diligence," mirroring the language in Rule 3:22-12(a)(2)(B).

Also relevant to this appeal is Rule 3:22-6A(2), which states that when a direct appeal is pending during PCR proceedings, it "shall be dismissed without prejudice," but "[i]f the defendant refiles the petition within 90 days of the date of the judgment on direct appeal . . . it shall be considered a first petition for [PCR]."

Defendant contends that the trial court's March 22, 2022 dismissal without prejudice pending appeal was based on Rule 3:22-6A and argues that "in the interest of fairness and to avoid injustice" this court should treat his December 5, 2022 letter to the court requesting "to re-open his petition for [PCR]," "as equivalent to a refiling." Doing so would render the petition timely under Rule 3:22-6A(2) as his pending appeal was resolved on November 23, 2022, and classify it as a primary rather than secondary PCR petition. We are not persuaded.

Even if we were to accept defendant's letter as a timely refiling it does not stand to reason that Rule 3:22-6A is intended to apply to situations where, as here, a defendant already had a direct appeal of the original judgment of conviction, and a first PCR petition that was denied then appealed and affirmed.

If defendants with more than one previously adjudicated PCR petition could treat subsequent petitions as first-time petitions simply because they filed the petition while appealing the denial of an order—such as a motion to correct an illegal sentence, which can be brought at any time—it would undermine the purpose of procedural bars. These bars exist to "respect the need for achieving finality of judgments[,] . . . to allay the uncertainty associated with an unlimited possibility of relitigation[,]" and to "encourage[] those believing they have grounds for post-conviction relief to bring their claims swiftly." State v. Mitchell, 126 N.J. 565, 576 (1992). Therefore, defendant's petition is a subsequent rather than primary petition because an appeal of a motion to correct an illegal sentence is not a direct appeal under the meaning of Rule 3:22-6A(2).

Having determined that defendant's claim is a subsequent PCR, we next address the trial court's reasoning in dismissing the petition as time barred. The PCR court stated:

> Pertinent to this case is [Rule] 3:22-12(a)(2)(b). The one-year period for filing a second or subsequent [p]etition for [PCR] allowed by this rule commences with the entry of the last proceeding. The [defendant's] last proceeding concluded on March 10, 2022. A [defendant] could overcome the hurdle if the grounds for relief could not have been raised in any prior proceedings, enforcement of the bar would result in fundamental injustice, or denial of relief would be contrary to the Constitution of the United States or New

Jersey. R. 7:10-2(d)(1)(A)-(C). None of the exceptions are applicable here.

Initially, the PCR court's reliance on Rule 7:10-2(d)(1)(A)-(C) was misplaced as it only applies to municipal courts. More importantly, while the PCR court relied on Rule 3:22-12(a)(2)(B),[3] the rule does not state, as the PCR court did, that the one-year period to file a subsequent PCR petition "commences with the entry of the last proceeding." Rather, it states that secondary or subsequent PCR petitions cannot be filed more than one year after "the date on which the factual predicate for the relief sought was discovered, if that factual predicate could not have been discovered earlier through the exercise of reasonable diligence."[4] R. 3:22-12(a)(2)(B).

Defendant filed his petition on September 14, 2021, well within one year of learning about Durham's third conviction from the Cumberland County Criminal Case Manager on April 8, 2021. The State's argument that Durham's convictions were publicly available and could have been discovered sooner and

[3] The PCR court cited Rule 3:22-12(a)(2)(b), which does not exist. We presume the court meant to cite to Rule 3:22-12(a)(2)(B).

[4] Even based on the PCR court's reasoning, the "last proceeding" would have been our November 23, 2022 decision affirming the denial of defendant's motion to correct an illegal sentence, see Rhett, No. A-3018-20 (slip op. at 1), not the March 22, order dismissing defendant's PCR petition, which the court incorrectly stated was issued on March 10.

previously raised through the exercise of reasonable diligence is unconvincing. It misplaces reliance on State v. Ways, where our Court found that the new testimony of a witness, who was known to the defense at the time of the trial, did not warrant a new trial, in part, because the testimony could have been discovered sooner with reasonable diligence. 180 N.J. 171, 196 (2004). However, defendant's situation is distinguishable in that Durham's elicited testimony at trial that he had two convictions was incomplete. To compare, that would be as if the witness in Ways testified, but the defense later learned that his testimony omitted important information. To hold that reasonable diligence required defendant to have discovered Durham's third conviction sooner—even though he and numerous attorneys have continuously dissected and challenged his conviction for over thirty years—would strain the meaning of diligence beyond its ordinary meaning. Defendant justifiably relied on the State's representations that Durham had only two convictions; there was no reason to believe otherwise.

Nonetheless, while defendant's petition is timely under Rule 3:22-12(a)(2)(B)'s requirements, it does not satisfy Rule 3:22-4(b)(2)(B)'s more stringent requirement that defendant must also establish that "in light of the

13

evidence as a whole" the new evidence "raise[s] a reasonably probability that the relief sought would be granted."

Defendant argues that Durham was "the State's most important witness." Consequently, evidence of his third conviction, unlawful possession of a weapon, could have "persuaded [the jury] that the testimony of [Durham] was not credible." Defendant further argues that unlike the other two convictions which were remote in time, this was a more recent conviction which could have had a larger impact on Durham's credibility with the jury. We are unpersuaded.

Defendant's reliance on State v. Nelson, 330 N.J. Super. 206 (App. Div. 2000), is misplaced. There, we held that the State's failure to disclose a key witness's prior conviction of sexual assault warranted a new trial. Nelson, 330 N.J. Super. at 215. However, in Nelson, the defendant had no record of the witness's convictions to impeach the witness's credibility. Id. at 211. Whereas here, defendant knew of two convictions to undermine Durham's credibility. Durham's convictions of burglary and CDS possession alone could have been perceived by the jury as indicative of an untrustworthy person and not credible. While Durham was a critical witness for the prosecution, there is no reasonable probability that the jury's knowledge of a third conviction would have changed

14

the outcome of the proceedings.  Therefore, defendant's petition must be barred under Rule 3:22-4(b)(2)(B).

III.

For the sake of completeness, we briefly address the merits of defendant's Brady and ineffective assistance of counsel claims.  The State's failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  A court must consider three essential elements when determining "whether a Brady violation has occurred:  (1) the evidence at issue must be favorable to the accused, either as exculpatory or impeachment evidence; (2) the State must have suppressed the evidence, either purposely or inadvertently; and (3) the evidence must be material to the defendant's case."  State v. Brown, 236 N.J. 497, 518 (2019).  "The existence of those three elements evidences the deprivation of a defendant's constitutional right to a fair trial under the due process clause."  Ibid. "[F]or the Brady rule to apply there must be a threshold determination of prosecutorial knowledge.  To meet this requirement the defense must demonstrate that the evidence it charges the prosecution with having suppressed 'had been known to the prosecution but unknown to the defense.'"  State v.

Carter, 85 N.J. 300, 313 (1981) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)). However, the "existence of a criminal record, which is peculiarly within the knowledge of law enforcement, is imputable to the trial prosecutor notwithstanding a lack of actual knowledge." Nelson, 330 N.J. Super. at 213.

"Determining whether the first two Brady elements have been satisfied is a straightforward analysis." Brown, 236 N.J. at 518. As to the third element, evidence is deemed material "if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." Nelson, 330 N.J. Super. at 214 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. "[D]efendant need not show that it is more likely than not that he would have received a different verdict with the disclosed evidence." Nelson, 330 N.J. Super. at 214. "When the reliability of a witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility justifies a new trial, irrespective of the good faith or bad faith of the prosecution." Id. at 216 (citing Giglio v. United States, 405 U.S. 150, 154 (1972)).

As to the first prong, there is no doubt that evidence of a State's witnesses' prior convictions helps defendant undermine their testimony.

As to the second prong—whether the State suppressed the evidence purposely or inadvertently—there is no indication it was aware of Durham's third conviction and decided not to share the information with defendant. The prosecutor advised the court outside of the presence of the jury:

> [STATE]: Your Honor, as a collateral and unrelated matter, . . . Durham has two prior indictable convictions. He will testify. One is [a] 1983 burglary and theft . . . and also [in] 1985[,] one count [of] possession of CDS. . . . The State would agree that these two convictions . . . would be admissible to impeach his credibility.

However, the State, due to its lack of knowledge of Durham's third conviction, failed to disclose it to defendant. As this court held in Nelson, the "prosecutor's lack of knowledge of the conviction is of no consequence," and awareness "is imputable to the trial prosecutor" because prior convictions are "peculiarly within the knowledge of law enforcement." 330 N.J. Super. at 213. It is also clear that defense counsel was unaware of a third conviction. As such, defendant has established that the prosecution suppressed the evidence.

As to the third prong, defendant does not establish the new evidence is material. As we noted, defendant fails to reasonably show that the evidence of Durham's third conviction would have changed the outcome of the proceedings.

17

Lastly, we turn to defendant's ineffective assistance claim. The second prong in <u>Strickland v. Washington</u> requires that, to establish a prima facie claim of counsel ineffectiveness, a defendant must show that there is "a reasonable probability, that but for the counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 694 (1984). Because defendant has failed to establish that there is a reasonable probability that the jury's knowledge of Durham's third conviction would have resulted in a different outcome, his ineffective assistance claim fails.

To the extent that we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirm.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3394-23