**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "'constitute precedent or be binding upon any court.'" Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5121-17

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JERMAINE SANDERS,

     Defendant-Appellant.

_____

Submitted June 1, 2020 – Decided June 15, 2021

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 05-04-1004.

Joseph E. Krakora, Public Defender, attorney for appellant (Lee March Grayson, Designated Counsel, on the brief).

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Caroline C. Galda, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Jermaine Sanders appeals from the trial court's order denying, without an evidentiary hearing, his petition for post-conviction relief (PCR). Sanders collaterally challenges his convictions for purposeful murder, felony murder, conspiracy, aggravated assault, and multiple carjackings, armed robberies, and weapons offenses.

In the course of the hearing on defendant's petition, the State produced, evidently for the first time, materials it received in response to a July 4, 2004 communications data warrant. The date of the materials apparently belies the testimony of a detective and a captain of the Essex County Prosecutor's Office (ECPO) about when and how they discovered facts establishing probable cause to arrest defendant. If the police lacked probable cause when they entered defendant's girlfriend's apartment, then the murder weapon and certain stolen items the police seized there should have been suppressed. If the date discrepancy is not adequately explained, it also raises significant questions about the credibility of the detective and the captain, whose testimony also figured prominently in the hearing on defendant's unsuccessful motion to exclude his custodial statements. The detective and captain also testified at trial.

2

Therefore, we are constrained to reverse in part and remand for an evidentiary hearing, so the PCR court can explore whether the detective and the captain testified falsely, and whether there is a reasonable probability that the outcome of the trial would have been different had the State timely disclosed the CDW materials.

I.

We assume the reader's familiarity with the facts that we detailed in our opinion affirming defendant's conviction on direct appeal. See State v. Sanders, No. A-2219-08 (App. Div. December 19, 2012) (Sanders I). According to the State's evidence, defendant and two co-defendants, Hafiz Josey and Quawee Jones, engaged in a crime spree that began in the early morning hours of July 3, 2004.

The spree started after Kendall Blake and Damian Clark left a bar on Mount Prospect Place at around 2:30 a.m. As they entered their car, an "ice bluish" Grand Cherokee Jeep with tinted windows cut them off and two men with guns alighted and approached the driver and passenger's sides. Blake and his friend were ordered at gunpoint to exit their car and lay on the ground. Blake testified one man went through his pockets and told him he was "going to die

A-5121-17

tonight." But police sirens sounded, and the two men fled, taking Blake's wallet and Clark's wallet, phone, and watch.

The next victim was Andrew De Souza. He was in his car at 16th Avenue and South 19th talking with a woman when he heard yelling. The woman ran to the rear of his car. Someone approached with an automatic handgun, pointed it at De Souza, and ordered him out. De Souza complied, then pushed the gunman and began to run when he was shot from behind. De Souza recalled seeing a dark colored Jeep Cherokee with tinted windows.

Between 3:15 and 3:30 a.m., Tiking Wallace-Wilson arrived at an apartment building to pick up a friend. Seconds after he stopped, a blue Jeep Cherokee pulled in front of him, and two men with guns exited and ordered Wallace-Wilson out of his Mercedes. They took his wallet and drove off in his car.

The crime spree continued. Shortly before 5 a.m., Jacque Thelemaque left a club and entered his black Lexus. As he opened the car door, a man with a gun demanded Thelemaque turn over the car keys. Then, a blue Jeep Cherokee pulled up in front of his car, boxed him in, and Thelemaque turned over the keys and cell phone.

4

Also, around 5 a.m., Alejandro Okoraogu-Loren was waiting at a red light on Elizabeth Avenue when a greenish-blue Jeep Cherokee cut him off and two armed men jumped out of the car. One of them ran to the driver's side of his car, put a gun to Okoraogu-Loren's neck, and demanded he and his passenger get out of the car. The two drove off with his car after taking his cell phone and a DVD player.

Then the crime spree took a deadly turn. At around 5:20 a.m., Marquise Carter, Jr., was shot to death. The Medical Examiner testified Carter suffered three gunshot wounds, one in his head, one in his neck, and one in his back.

But, there were two more victims. Andre Rossignol was driving his taxicab around 5:45 a.m. when a blue Jeep Cherokee parked in front of him. Two men got out and approached his car. He tried unsuccessfully to shut his door. One of the men got in the car and aimed a gun at him. They took all of Rossignol's money and then returned to the Jeep and fled. Rossignol chose defendant's picture from a photo array when he gave police a statement, but did not identify defendant at trial.

Around 6:30 a.m., Josefina Rosa was driving her Lexus when a gunman left a blue Jeep, approached her window, and demanded money. When she said

5

she had none, he ordered her out of her car. He took her driver's license and cell phone, and then drove off in her car.

The ECPO detective testified he applied for a communications data warrant (CDW) during July 4th weekend for the cell phones the robbers stole. He said he received results within a day or two. The detective learned that Okoraogu-Loren's phone was still being used after the robbery. Based on the detective's reading of the phone records, two teams were sent to two addresses, including defendant's mother's house. After speaking with defendant's mother, one team then went to an apartment where defendant lived with his girlfriend. The police knocked on the door, and defendant fled out a back window. However, the police searched the apartment and found incriminating pieces of evidence in plain view, including: a loaded .45 caliber revolver; cell phones; Thelemaque's vehicle registration and insurance identification card; and Rosa's driver's license.

The ECPO captain confirmed the detective's version of events. He testified that he, the detective, and other law enforcement officers huddled once they had the CDW return in hand. The captain was part of the team that went to the defendant's girlfriend's house and discovered the murder weapon and other stolen items.

A-5121-17

Police arrested defendant two days after the seizure and charged him with unlawful possession of a handgun. Hours after being arrested, defendant gave police two statements, admitting he, Josey, and Jones were involved in the robberies and Carter's murder.

Pre-trial, defendant moved unsuccessfully to suppress his statements and the evidence seized from his girlfriend's apartment. After an extended trial, defendant was convicted of most counts of the indictment.

On direct appeal, we affirmed the court's orders denying defendant's suppression motions. However, regarding the apartment search and seizure, we did so for reasons other than those adopted by the trial court. We held the police's warrantless entry into the home could not be justified as consensual, or an investigative detention supported by reasonable and articulable suspicion. Sanders I, (slip op. at 23, 31-32). Rather, it was justified by probable cause to arrest defendant, which the trial court properly found, and exigent circumstances. That probable cause was grounded in the totality of the circumstances which included, significantly, the police's reported discovery that a cell phone stolen in the carjackings was used, after it was taken, to call

A-5121-17

defendant's mother.[1] We wrote, "At the very least, the police had probable cause to arrest defendant for receiving stolen property, as there was a basis for more than mere suspicion that he possessed one of the cell phones . . . stolen in the carjackings." Sanders I, (slip op. at 35).

We also affirmed the order denying the motion to exclude defendant's two custodial inculpatory statements. Defendant contended the statements were involuntary because police repeatedly assaulted him while in custody. We deferred to the trial court's credibility determination that the police witnesses' denials were more believable than defendant's claims of coercion.

Although we affirmed defendant's convictions, we remanded for resentencing. Thereafter, the sentencing court merged defendant's convictions, and sentenced him to an aggregate custodial sentence of one hundred years.

## II.

Defendant filed a timely pro se PCR petition seeking relief on the following grounds:

Ineffective assistance of trial counsel.

---

[1] Probable cause was also supported by "the statement by defendant's mother, which connected defendant physically to the person involved in the crime, and connected defendant by name, given the similarity between Tramaine [the name a witness used to identify a person who threatened to rob him during the crime spree] and Jermaine; and the [alleged] presence of the black Lexus parked in front of [the girlfriend's] apartment." Sanders I, (slip op. at 34).

Failed to investigate, to locate or interview witnesses.
Failed to develop facts.
Missing witness instruction = Clawans instruction.
Ineffective assistance of appellate counsel.
Appellate counsel failed to raise confrontation clause claim.
Failed to raise prosecutor misconduct.
Failed to raise ineffective assistance of trial counsel.
Anders requirement.
Wade hearing.[2]

In a two-page addendum, defendant argued that trial counsel was ineffective by failing to investigate defendant's arrest, including locating and interviewing witnesses, and obtaining the communications data warrant, supporting affidavit, and produced phone records. He argued trial counsel improperly litigated defendant's suppression motions. Defendant also contended appellate counsel was ineffective by failing to raise the prosecutor's misconduct in vouching for a State witness and mischaracterizing defendant's mother's statement to police. He also contended that defense counsel should have called police detective Michael Lalley as a witness to question him about the circumstances of defendant's arrest.

Counsel filed a supporting brief, which is not before us. However, as summarized by the PCR court, defendant raised seven points challenging his

---

[2]  We have corrected defendant's capitalization for easier reading.

conviction: (1) trial counsel was ineffective by failing to request a change in venue away from Essex County, because Marquise Carter, Jr.'s father worked in the Essex County Prosecutor's Office;[3] (2) newly discovered evidence that Lalley pleaded guilty to obstruction of justice could have been used to impeach his testimony if he testified; (3) trial counsel was ineffective by failing to object to the prosecutor's remarks in summation denigrating the defense and expressing his personal belief in defendant's guilt; (4) the trial court's failure to issue a curative instruction after the prosecutor's comments deprived defendant of a fair trial; (5) appellate counsel was ineffective by failing to raise the summation and jury charge claim on his direct appeal; (6) the prosecutor's failure to disclose phone numbers on a carjacking victim's cellphone, which assisted police in locating defendant and seizing evidence, deprived defendant of a fair trial; and (7) trial counsel was ineffective by failing to call two witnesses at trial. PCR counsel also sought a change in venue of the PCR proceeding itself.

At oral argument on the petition, PCR counsel renewed the request made in his papers for the State to produce the CDW and the documents obtained thereby. He noted trial counsel's repeated comments during trial that the

---

[3] Marquise Carter Sr. worked for the Newark Police Department when it investigated his son's murder.

documents were not produced in discovery. Pressed by the PCR court to identify the prejudice caused by the non-production, PCR counsel responded that it was difficult to do that without the documents. However, he stated the documents could show that State's witnesses lied about how they arrested defendant. The State conceded that the CDW application and order were discoverable at trial. The PCR judge ordered the State to produce the documents and continued the hearing several weeks later.

At the resumed hearing, PCR counsel insisted that the State bore the burden to establish that defendant's mother's phone number was included in the production. The court concluded that defendant had that burden. However, PCR counsel did not present evidence that the phone records omitted defendant's mother's phone number, nor did counsel otherwise supplement his argument that the failure to disclose the CDW and related documents materially affected the result at trial. Instead, at defendant's direction, PCR counsel focused on a separate point: that trial counsel was ineffective by failing to obtain defendant's arrest report.

However, neither PCR counsel nor the PCR court focused on another aspect of the produced documents. The "subscriber history" that the cell phone carrier, Nextel, provided bore two facsimile transmission dates — August 19,

11

2004 and September 10, 2004.[4]  That was over a month or more after the date the ECPO detective and the captain claimed they analyzed the CDW production and ascertained that someone — presumably defendant — used the stolen cell phone to call defendant's mother.

The PCR court rejected defendant's ineffective-assistance-of-counsel argument after applying the familiar two-pronged test in <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984) (holding that to establish ineffective assistance of counsel, a defendant must demonstrate (1) counsel's performance was so deficient that it "fell below an objective standard of reasonableness," and (2) there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Regarding the failure-to-seek-a-change-of-venue claim, the PCR court found no error.  The judge explained that defendant's complaint about the alleged conflict of interest within the ECPO pertained not to where he would be tried, but who would prosecute his case.  A change of venue would not have changed the prosecutor.  And, defendant provided no authority for disqualifying the ECPO.  Furthermore, defendant failed to establish that the Essex County jury

---

[4]  The August 2004 date is fuzzy and difficult to make out.  It may actually be September 10, 2004, based on the dates on subsequent pages.

12

in his trial was incapable of rendering a fair and impartial verdict. Thus, trial counsel was not ineffective by failing to seek a change of venue.

The PCR court also denied defendant's motion to change the venue of the PCR hearing itself. The court noted that the only authority defendant cited, State v. Harvey, 176 N.J. 522 (2003), was inapplicable, as it pertained to a change of venue to consider the alleged ineffectiveness of a trial counsel who had become a sitting judge in the county where the PCR petition would otherwise have been heard.

The PCR court also rejected defendant's claim that a conviction of one of the investigating detectives for obstruction of justice several years after defendant's trial constituted newly discovered evidence that entitled defendant to a new trial. The PCR court found that defendant satisfied none of the three prerequisites for relief under State v. Ways, 180 N.J. 171, 187 (2004) and State v. Carter, 85 N.J. 300, 314 (1981). Defendant did not show "the evidence [was] . . . material and not 'merely' cumulative, impeaching or contradictory; . . . the evidence was discovered after completion of the trial and was 'not discoverable by reasonable diligence beforehand'; and . . . the evidence 'would probably change the jury's verdict if a new trial were granted.'" Ways, 180 N.J. at 187 (quoting Carter, 85 N.J. at 314). Notably, the evidence of Detective Michael

Lalley's obstruction-of-justice conviction was at best, impeachment evidence; and since the detective did not testify, his conviction could not possibly have changed the jury's verdict if a new trial were granted.[5]

The PCR court held that that defendant's claims regarding the prosecutor's summation were barred by Rule 3:22-4, because he could have raised them on direct appeal but did not. In any event, the PCR court found that the prosecutor's comments were not improper. The prosecutor appropriately advised the jury that what he said was not evidence. Also, the prosecutor rhetorically questioned the absence of defendant's mother as a trial witness in response to the defense summation questioning the absence of a police witness. The prosecutor did not shift the burden to defendant; in fact, the prosecutor reminded the jury "the defense does not have to do anything." As a result, trial counsel was not ineffective when he did not object to the prosecutor's summation. Inasmuch as the prosecutor did not make improper remarks, the trial court was not obliged sua sponte to deliver a curative instruction, nor was appellate counsel required to raise the issue on direct appeal.

---

[5] Detective Lalley's conviction arose out of his obstruction of an FBI investigation into allegations that he had sexual relations with minors.

The PCR court then addressed defendant's claim that he was denied a fair trial because the State withheld the communications data warrant, the supporting affidavit, and the phone records obtained under the CDW. As we explained, the police reportedly identified repeated calls from the stolen cell phone to defendant's mother's phone number. That allegedly led police to defendant's mother, which then led them to defendant's girlfriend's apartment and the seizure of the handgun used in the homicide and items that belonged to some of the robbery victims.

The PCR court concluded that defendant "failed to sustain his burden of establishing prejudice arising from his untimely receipt of these telephone records." The PCR court also held that because trial counsel raised the non-disclosure of the phone records in the unsuccessful motion for a new trial, he was barred from relying on the issue to obtain PCR.[6]

---

[6] Apparently citing a court exhibit, the PCR judge stated "trial counsel asserted that 'the State failed to ever present the phone records from which they went to the defendant's mother's house and eventually to his girlfriend's house where he was living.' By allowing this 'hearsay' testimony without the records the jury improperly could have inferred that defendant used a stolen cell phone to call his mother thus prejudicing the entire case." However, the record before us does not contain defendant's new trial motion brief; and the oral argument supporting the motion and the trial court's brief oral opinion denying it does not mention the CDW materials.

The PCR court also rejected defendant's argument that trial counsel was ineffective by not calling a witness, Rasheed Simmons, who allegedly would have testified that police used excessive force when they arrested defendant. Notably, Simmons testified at the suppression hearing at which the court credited the police witnesses and rejected defendant's argument that he was assaulted while in custody and coerced to confess. The PCR court held that trial counsel's decision not to call at trial a witness whose testimony the trial court already rejected as incredible was a reasonable tactical decision and not ineffective assistance of counsel. In any event, the PCR court concluded, in light of the other "substantial independent evidence of . . . guilt," that Simmons's testimony would not have affected the jury's verdict.

On appeal, defendant reprises the arguments presented to the PCR court, contending:

> POINT I
>
> THE PCR COURT ERRED BY FINDING THAT THE DEFENDANT WAS NOT PREJUDICED BY THE STATE'S FAILURE TO PROVIDE DISCOVERY TO THE DEFENSE CONSISTING OF THE COMMUNICATIONS DATA WARRANT (CDW), AFFIDAVIT AND ACTUAL PHONE RECORDS AND THE DEFENDANT ASSERTS THAT CDW MATERIALS CONSTITUTED NEWLY DISCOVERED EVIDENCE WARRANTING A NEW TRIAL.

16

POINT II

THE PCR COURT ERRED BY DENYING THE
DEFENDANT'S MOTION TO VACATE HIS
CONVICTION BASED ON NEWLY DISCOVERED
EVIDENCE CONSISTING OF (A) FORMER
DETECTIVE LALLEY'S CONVICTION FOR
OBSTRUCTION OF JUSTICE; AND (B) TWO
WITNESSES WHO ALLEGEDLY OBSERVED
EVENTS LEADING TO THE DEFENDANT'S
ARREST.

POINT III

THE PCR COURT ERRED IN DENYING THE
DEFENDANT'S PETITION FOR POST-
CONVICTION RELIEF WITHOUT AFFORDING
HIM AN EVIDENTIARY HEARING TO FULLY
ADDRESS HIS CONTENTION THAT HE
RECEIVED INEFFECTIVE ASSISTANCE OF
COUNSEL FROM HIS TRIAL ATTORNEY AND
APPELLATE COUNSEL IN THE DIRECT APPEAL.

POINT IV

THE PCR COURT ERRED BY DENYING THE
DEFENDANT'S REQUEST TO TRANSFER HIS PCR
PETITION TO ANOTHER COUNTY FOR
DISPOSITION.

POINT V

THE PCR COURT ERRED IN DETERMINING THAT
NO ERRORS OCCURRED WARRANTING PCR
RELIEF.

A-5121-17

POINT VI

THE PCR COURT ERRED BY DENYING THE DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING.

Defendant also filed a supplemental pro se brief, contending the newly discovered evidence (cell phone records) reveal that the police did not have probable cause to arrest him, and as such, the unconstitutional arrest and the evidence seized as a result should be excluded, resulting in his conviction being vacated.

III.

When a PCR court does not hold an evidentiary hearing, we "conduct a de novo review of both the factual findings and legal conclusions of the PCR court." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). To obtain an evidentiary hearing on a PCR petition, a defendant must establish a prima facie case for relief, demonstrate there exist material issues of disputed fact, and show that an evidentiary hearing is necessary to resolve the claims. R. 3:22-10(b). We review an order declining to hold an evidentiary hearing for an abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

18

At the outset, we note that defendant seeks PCR on three distinct grounds (although he sometimes conflates them): his trial and appellate counsel were ineffective; the State withheld exculpatory information; and he has obtained newly discovered evidence. We have already described the two-pronged Strickland standard that governs an ineffective-assistance-of-counsel claim, and the three-pronged Ways-Carter test that governs his newly-discovered-evidence claim.

To secure relief on the claim that the State withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963), "defendant must show that (1) the prosecution suppressed evidence; (2) the evidence is favorable to the defense; and (3) the evidence is material." State v. Martini, 160 N.J. 248, 268 (1999). "[E]vidence is 'material' if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. at 269 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Put another way, to establish a due process violation, the suppressed evidence must be "material either to guilt or to punishment." Brady, 373 U.S. at 87. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. Material evidence may include impeachment evidence. Id. at 676; see also State v.

<u>Hyppolite</u>, 236 N.J. 154, 165 (2018) (stating that "[i]mpeachment evidence, as well as exculpatory evidence, is governed by the <u>Brady</u> rule"); <u>State v. Nelson</u>, 330 N.J. Super. 206, 215-16 (App. Div. 2000) (stating that "[w]hen the reliability of a witness may well be determinative of guilt or innocence, non-disclosure of evidence affecting credibility justifies a new trial, irrespective of the good faith or bad faith of the prosecution").

IV.

We turn first to defendant's argument regarding the phone records produced in response to the CDW. As we indicated at the outset, on the basis of this argument we are constrained to remand for an evidentiary hearing.

A.

Defendant contends the State's failure to provide the CDW materials before trial denied him a fair trial. He presents multiple theories to support his claim for relief. He argues the State violated his due process rights under <u>Brady</u>. He contends "the results of the CDW . . . indicate that the phone records were not obtained until <u>after</u> the police had searched the car, residences and had arrested the defendant." That "casts significant doubt on the police version of the alleged events and undermines confidence in the outcome of the proceedings at trial." He also characterizes the CDW materials as newly discovered

20

evidence, requiring a new trial in the interests of justice. And he argues trial counsel was ineffective by failing to obtain the CDW materials. He contends the PCR court should have ordered an evidentiary hearing to explore the ramifications of the CDW materials. Lastly, he challenges the PCR court's holding that Rule 3:22-5 barred his claims related to the CDW materials. Defendant notes that the rule only bars identical or substantially equivalent claims, and the issue raised on direct appeal differed from the issue raised in support of PCR.

In his pro se brief, defendant questions how police, even if armed with the phone records, were able to identify the associated addresses. Noting that the probable cause finding was based on the CDW materials, defendant contends the search and seizure and his arrest should be deemed fruits of unconstitutional conduct.

The State argues that defendant has not demonstrated how the CDW materials would have changed the outcome of the case. The State points to the other evidence of guilt, including defendant's confession. Also, because defendant allegedly could have raised the non-disclosure of the records on direct appeal, the State contends that Rule 3:22-4 bars his present argument based on the CDW materials. The State also argues that because PCR counsel did not

raise the date discrepancy issue before the PCR court, we should decline to consider it on appeal.

B.

We address the procedural arguments first.  Neither <u>Rule</u> 3:22-4 nor <u>Rule</u> 3:22-5 bars defendant's claim based on the CDW materials.

The PCR court held that <u>Rule</u> 3:22-5 applies because trial counsel raised the non-disclosure of the CDW materials in connection with his new trial motion.  We are unconvinced.  The rule bars claims that "are either identical or 'substantially equivalent'" to one previously adjudicated.  <u>State v. Marshall</u>, 173 N.J. 343, 351 (2002).  Neither party has provided us with the new trial motion.  But, based on the PCR court's discussion, the new trial motion evidently implicated the CDW materials only peripherally, because the motion pertained to the admission of the hearsay statements that defendant used the stolen cell phone to call his mother.  That hearsay issue is distinct from the question whether law enforcement witnesses accurately testified at the suppression hearing and at trial that they relied on the subscriber history in deciding to visit defendant's mother's home and later his girlfriend's home with the intent to detain him.

22

We also reject the State's argument that defendant could have raised the issue of the CDW materials in his direct appeal, and therefore is barred by Rule 3:22-4. We must ask "whether the additional facts disclosed in the post-conviction relief record sufficiently augment the scope of such claims to preclude the conclusion that a substantially similar claim could have been advanced on the basis of the trial record." State v. Marshall, 148 N.J. 89, 147 (1997). The answer is yes. At most, defendant could have raised the general issue of the CDW materials' non-disclosure. But, without knowing the date discrepancy in the subscriber history, defendant's argument would have presented a mere shadow of the significant issue raised before us regarding allegedly false testimony. The rules do not require a court "to acquiesce to a miscarriage of justice." State v. Nash, 212 N.J. 518, 546 (2013).

Lastly, we decline to disregard the date discrepancy issue simply because PCR counsel did not clearly present it to the PCR court. Although we generally need not address issues that an appellant did not properly present to the trial court, we may do so if the issue "substantially implicate[s] the public interest." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 339 (2010); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). Absent an explanation for the date discrepancy, the subscriber history indicates that two law enforcement

witnesses who testified at the suppression hearing, the <u>Miranda</u> hearing, and at trial, testified falsely about what they knew and when they knew it. The interests of justice command us to address the issue.

C.

Turning to the merits, defendant has demonstrated a prima facie case that warrants an evidentiary hearing. The State conceded that the CDW materials were discoverable. Under <u>Rule</u> 3:13-3(b)(1), the State was obliged to produce the materials because they were relevant.

The State may also have been obliged to disclose these materials under the constitutional principles established in <u>Brady</u>. <u>See</u> <u>Biles v. United States</u>, 101 A.3d 1012, 1019, 1025 (D.C. 2014) (collecting cases and holding the government's failure to disclose information that is material to a suppression hearing violates due process under <u>Brady</u> where the suppression of the evidence would have affected the outcome of the trial); <u>see also</u> Wayne R. LaFave et al., 6 <u>Criminal Procedure</u>, § 24.3(b) (4th ed. 2020) (commenting "[a] number of courts have held that 'favorable' evidence includes evidence that is material to a suppression hearing, although this position is rejected by other judges who read the Court's precedent as protecting against the conviction of an innocent person,

24

a concern 'not implicated when the undisclosed information is information that would enable a defendant to obtain the suppression of inculpatory evidence.'").

The United States Supreme Court has not yet ruled on this constitutional question. In State v. Marshall, 148 N.J. 89 (1997), our State Supreme Court considered a PCR petitioner's argument that withholding certain evidence violated his due process rights under Brady by affecting the result of a suppression hearing. Id. at 185. The Court denied relief after assuming, but without clearly deciding, that Brady applied to withholding information material to suppression hearings. "Assuming that the failure to turn over the memoranda constituted a direct [constitutional] violation . . . our conclusion that disclosing the memoranda would not have materially influenced the outcome of the suppression hearing indicates that those alleged violations would have been harmless." Id. at 189.

Therefore, we need not decide in this appeal whether the Brady doctrine extends to information favorable to a defendant's Fourth Amendment suppression argument for two reasons. First, the parties have not comprehensively addressed this due process question in their submissions. Second, the undisclosed information at issue in this case might have been

admissible at trial, not just the suppression hearing, to impeach the credibility of the detective and captain, both of whom testified at trial.

Defendant has initially demonstrated the CDW materials were favorable to the defense for two reasons. First, the CDW materials could have altered the result of the suppression hearing. As we have explained, probable cause was predicated on law enforcement's purported discovery that defendant likely used the stolen cellphone to call his mother. If that discovery occurred after the search and seizure at the girlfriend's apartment, then the police would have lacked probable cause, and the murder weapon and other items should have been suppressed. The PCR court must determine whether, if the physical evidence had been wrongfully seized, there is a reasonable probability the result of the trial would have been different. The State would have been unable to introduce the physical items at trial. We recognize the State's proofs also included defendant's confessions. But, that may not have been sufficient absent the physical evidence.

Also, arguably, defendant's arrest and subsequent interrogation were the fruits of the physical evidence, because he was initially arrested on charges of possessing the items seized. The trial court thus may need to consider whether defendant's confession, obtained in a custodial setting, is sufficiently attenuated

A-5121-17

from the possible illegal arrest to avoid being excluded as the fruit of the poisonous tree.  See State v. Chippero, 164 N.J. 342, 353 (2000).

Second, defendant has presented a prima facie case that the CDW materials were exculpatory because the defense could have used them to impeach the two law enforcement witnesses at the Miranda hearing and at trial.  See Hyppolite, 236 N.J. at 165; Nelson, 330 N.J. Super. at 215-16.  The PCR court must determine if there is a reasonable probability that the impeachment would have altered the result of the Miranda hearing, and in turn, altered the result of the trial itself.

In sum, the date discrepancy in the subscriber history raises a serious question whether law enforcement knew a stolen cell phone was used to call defendant's mother, and whether law enforcement personnel had probable cause to arrest defendant when they appeared at defendant's girlfriend's home.  If they lacked probable cause, then the murder weapon, and the other stolen items seized should have been suppressed.  The date discrepancy may also have so impaired the credibility of the ECPO detective and captain as to affect the result of the Miranda hearing.[7]  The PCR court must determine whether there is a

---

[7] The trial court's Miranda decision rested substantially on its credibility findings.  Notably, the court excluded Sanders' co-defendant's statement because

reasonable probability the result of the trial would have been different if the State had been constrained to go to trial without the physical evidence or the confession, or both, and with two law enforcement witnesses subject to impeachment.

V.

We are unpersuaded by defendant's remaining points on appeal, and affirm substantially for the reasons provided by the PCR court. We add the following comments.

Defendant asserts a right to a new trial based on two forms of newly discovered evidence: the 2011 obstruction of justice conviction of a police detective involved in the investigation of defendant's case; and a 2016 investigator's report regarding alleged witnesses to defendant's July 9, 2004 arrest. "We review [the denial of] a motion for a new trial decision for an abuse of discretion." State v. Fortin, 464 N.J. Super. 193, 216 (App. Div. 2020), cert. denied, 246 N.J. 50 (2021), and we discern none here.

_____

of police witnesses' inconsistencies. If the court had found that the detective and captain were not credible, that may well have tipped the balance in Sanders' favor. That is so, particularly given the discrepancy in the captain's testimony about the presence of a stolen car in front of the girlfriend's apartment building. See Sanders I, (slip op. at 9).

The officer's obstruction of justice conviction occurred several years after defendant's trial; the crime had nothing to do with the detective's police work in defendant's case; and the detective did not testify. The PCR court properly held that the conviction was not the kind of evidence that would probably have affected the jury's verdict.

We reach the same conclusion with respect to defendant's contention that he was entitled to a new trial based on an investigator's 2016 report regarding alleged witnesses to defendant's July 9, 2004 arrest. Putting aside its questionable materiality, defendant has not demonstrated that the report was both discovered after the trial and was "not discoverable by reasonable diligence beforehand." Carter, 85 NJ. at 314. And, a failure to call either, or both, of these witnesses at defendant's suppression hearing does not constitute ineffective assistance of counsel, as the report only consists of hearsay statements by two individuals, neither of whom provided certifications supporting the narrative provided in the investigation report.

We also reject defendant's contentions that his trial and appellate counsel were ineffective in other ways. Defendant contends that trial counsel should have objected to comments the prosecutor made in summation, and that appellate counsel should have sought reversal based on those comments.

Defendant argues the prosecutor repeatedly gave his personal opinion of the case, denigrated defense counsel, and shifted the burden of proof to defendant by questioning why the defense did not call defendant's mother and girlfriend as defense witnesses at trial. Trial counsel objected to some of the remarks, but as a strategic matter declined the court's offer to issue a curative instruction, out of concern that doing so would be counter-productive.

In any event, the prosecutor's comments were not so significant, particularly when viewed as part of the "summation as a whole," see State v. Atwater, 400 N.J. Super. 319, 335 (App. Div. 2008), that there is a reasonable probability that they altered the result of the trial. Prosecutorial misconduct may compel reversal if it "was so egregious that it deprived the defendant of a fair trial." State v. Frost, 158 N.J. 76, 83 (1999). The conduct must be "'clearly and unmistakably improper,' and it must have substantially prejudiced [the] defendant's fundamental right to have a jury fairly evaluate the merits of his defense." State v. Timmendequas, 161 N.J. 515, 575 (1999). The prosecutor's remarks do not meet that test.

Finally, defendant's claims regarding trial and PCR venue do not satisfy either prong of the Strickland test. Although the murder victim's father was a homicide detective in the county where the trial was held, defendant cites no

authority, and we are aware of none, that entitled defendant to be tried in a different county. The father's position did not deprive defendant of a fair trial. Nor did defendant present a basis for transferring venue of the PCR hearing itself.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part; and reversed and remanded in part for an evidentiary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION