**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0213-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE CORTES, a/k/a
JOSE M. CORTES,

    Defendant-Appellant.

_____

Submitted February 24, 2025 – Decided March 6, 2025

Before Judges Sabatino and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-05-1578.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Susan Brody, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Jose Cortes appeals the July 19, 2023 order denying his petition for post-conviction relief ("PCR") without an evidentiary hearing. After an eight-day trial in 2017, the jury found defendant guilty of the following charges: first-degree conspiracy to commit murder of Jose Vega and Christopher Humphrey; first-degree leader of a narcotics trafficking network; first-degree unlawful possession of a handgun; second-degree unlawful possession of a weapon; and second-degree certain persons not to have weapons. Defendant filed a direct appeal, and in State v. Cortes, No. A-4779-16 (App. Div. Oct. 1, 2019), we affirmed defendant's conviction but remanded for the limited purpose of revising his conviction to merge his conspiracy-to-murder offenses. Defendant then filed a petition for PCR, and now appeals the PCR court's order.

On appeal, defendant raises two arguments. First, he argues the PCR court erred in holding his trial counsel was not ineffective in his failure to reasonably investigate the case, including failure to engage a DNA expert at trial; to investigate the phone records of one of the State's key witnesses, Jessica Savage; and to interview Andre Domenices, a potential defense witness. He also contends the PCR court erred in holding his claims were procedurally barred. Second, defendant maintains the PCR court erred in finding that the State did

2

not commit a <u>Brady</u>[1] violation when it did not disclose to defendant the potentially-exculpatory statement of Savage recanting her previous statement to the police. Defendant raises additional issues in his pro se supplemental brief, including ineffective assistance of counsel claims regarding his trial counsel, appellate counsel, and PCR counsel.

We conclude the PCR court properly found defendant failed to establish his ineffective assistance of counsel claims and meet the required prongs of the <u>Strickland-Fritz</u>[2] test and affirm the July 19, 2023 order denying defendant's petition for PCR on those grounds. However, because the record before us is unclear as to whether the State or defendant's counsel possessed Savage's recanting statement prior to the conclusion of defendant's trial, we reverse in part and remand for an evidentiary hearing on those limited issues.

I.

Because the PCR court recited the factual findings in our decision in <u>Cortes</u>, we also incorporate the facts from that decision here. The grand jury indicted defendant on eleven counts, including: (1) first-degree murder of Jose

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

[2] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>State v. Fritz</u>, 105 N.J. 42 (1987).

Vega; (2) first-degree murder of Christopher Humphrey; (3) first-degree conspiracy to commit murder of Jose Vega; (4) first-degree conspiracy to commit murder of Christopher Humphrey; (5) second-degree disturbing of human remains of Jose Vega; (6) second-degree disturbing of human remains of Christopher Humphrey; (7) second-degree possession of a weapon; (8) second-degree possession of a weapon for an unlawful purpose; (9) first-degree leader of a narcotics trafficking network; (10) second-degree certain persons not to have a weapon; and (11) first-degree unlawful possession of a firearm.

On March 2, 2017, defendant's trial commenced. We concluded in Cortes that the State's evidence at trial established defendant "co-managed a drug distribution enterprise selling cocaine and heroin out of a house on 4th Street in Camden" ("4th Street House"). Cortes, slip op. at 3. The State called as witnesses Savage, a drug-addicted person "who frequently bought drugs at the house and sometimes acted as a lookout," and Robert Thompson, a "cocaine user who had regularly bought drugs at the house," as key fact witnesses. Ibid. Both Savage and Thompson observed "drug-related activities in" 4th Street House. They also saw a gun that was "kept [at 4th Street House] evidently to be used as needed." Ibid.

4

The State established at trial that in December 2013, Humphrey, one of the murder victims who worked at 4th Street House as a lookout, informed a friend he was planning on "going out on [his] own and starting a drug distribution 'set'" with Vega, the other murder victim, who worked at 4th Street House as a dealer. Ibid. Approximately around this time, "Savage learned that Vega had been selling the heroin of another competing supplier out of" 4th Street House. Ibid.

Savage testified she reported this to Jorge Lopez, who was also known as "Wink" and who worked at 4th Street House as a dealer. She testified she purchased the competing supplier's heroin from Vega while Lopez "listened in on his cell phone," she used the heroin, and then gave the empty bags to Lopez and defendant, who were outside and waiting in defendant's pickup truck. Savage also testified defendant and Lopez paid her, and Lopez told her to leave.

That same month, Humphrey and Vega disappeared. Their bodies were discovered on December 22, 2013. Both men had been shot and their bodies "had been dropped several feet into the woods without any drag marks." Cortes, slip op. at 3.

Savage testified at trial that defendant—also known as "Pep"—and "Big Andy" were "bosses" at 4th Street House "and all money transactions went

through them." On cross-examination, Savage did admit her cooperation with the Camden police department "was the result of the police threatening to charge her as an accessory to murder."

Thompson testified at trial that 4th Street House was known as "Pep's house," defendant would sometimes come to the house to resupply the cocaine, and defendant drove a white Ford pickup truck.

On January 6, 2014, Camden police officers obtained a warrant to search 4th Street House. As the officers were completing their search, individuals who were upstairs on the second floor of 4th Street House threw 126 bags of heroin and 29 bags of powdered cocaine out of the window. Cortes, slip op. at 13-14. While conducting the search, the police found $3,096 in cash. Ibid. The majority of the money was found in the possession of Domenices. During this search, the police also "found DNA from Humphrey's blood on the wall on the right side of the front door of the house and DNA from Vega on swabs from the leg of a pool table." Id. at 4.

The police obtained cell phone records which showed on the day of Humphrey and Vega's murders, defendant's phone was connected to towers close to 4th Street House and the location of where the bodies were found. On January 7, 2014, Camden police seized defendant's pickup truck. "DNA testing

6

from the tailgate of defendant's pickup truck identified Humphrey as the source of [the] DNA from at least one of the specimens . . . [a]nd Vega as matching the minor DNA profile of one of the other specimens." Ibid.

After an eight-day trial, on March 22, 2017, the jury found defendant guilty of first-degree conspiracy to commit the murders of Jose Vega and Christopher Humphrey; second-degree unlawful possession; and first-degree leader of a narcotics trafficking network. The next day, on March 23, 2017, the jury returned a guilty verdict on the charges of second-degree certain persons not to possess weapons and first-degree unlawful possession of a handgun. The jury found defendant not guilty of all other charges, including murder. On June 2, 2017, after granting the State's motion to extend the term of imprisonment and finding that aggravating factors applied to one of the counts of defendant's indictment, the trial court sentenced defendant to life in prison plus seven years, with thirty-five years of parole ineligibility.

Following his sentencing, defendant filed a direct appeal in which he raised numerous issues, including requests for a new trial due to admissions of inadmissible hearsay during his trial; the merger of some of his charges; the reduction of the extended term for his leader of a narcotics network charge; and his motion for acquittal. See id. at 4-5. We affirmed defendant's convictions

7

but remanded to the trial court for the limited purpose of merging counts three and four, defendant's conspiracy-to-murder offenses. Id. at 3, 18. In February 2020, the New Jersey Supreme Court denied defendant's petition for certification. Cortes, 241 N.J. at 6.

In July 2020, defendant filed a pro se petition for PCR. Defendant's petition included a pro se brief where he raised six claims based on ineffective assistance of his trial counsel. In January 2022, defendant's PCR counsel submitted a brief in support of his pro se petition requesting the court grant defendant's PCR petition or hold an evidentiary hearing. In June 2022, defendant added an additional claim for PCR, where he argued the "newly uncovered telephone evidence demonstrates Jessica Savage . . . provided false testimony to law enforcement officials and at trial." In November 2021, defendant filed a second pro se brief for his PCR petition.

In support of his PCR petition, defendant submitted a statement taken by a private investigator retained by co-defendant Lopez's trial counsel on January 17, 2017, less than two months before defendant's trial. In this statement, Savage agreed she was providing "a voluntary and truthful statement about this matter," and stated she gave the police a statement after the alleged murder of Vega and Humphrey, "[b]ut [she] was a heroin addict" and "would have told

them anything they wanted to hear."  Savage also stated:  "I don't know what I saw or didn't see that day.  I don't think [the statement given to police] [is] accurate.  I mean, I would have said anything to get away from the police and go get high."  In the statement, the private investigator asked Savage, "[i]s that what you did that day?  Said anything you wanted?"  She replied "[a]bsolutely," and explained the reason why she would have "[s]aid anything" was that she "was a homeless drug addict," who had "no food[] [and] nowhere to go," and "[t]he police were giving [her] a hotel room and food."  Savage then recanted the statements she made to the police in 2014:

> [Investigator]:  . . . . [I]s it fair to say you have no idea if []Lopez had anything to do with that homicide or not?
>
> [Savage]:  That is fair. . . .
>
> [Investigator]:  You don't know.  Correct?
>
> [Savage]:  No.  I don't know.
>
> [Investigator]:  Ok.  Do you have any information regarding that homicide which took place on [December 21, 2013], at [4th Street House], in Camden, at all?
>
> [Savage]:  No.
>
> [Investigator]:  . . . . [A]s of this time . . . you have no knowledge of what took place at [4th Street House], in Camden, New Jersey on [December 21, 2013].  Is that correct?

9

[Savage]: No. I don't.

In addition to Savage's statement, defendant submitted a handwritten letter he received from Domenices ("Domenices Letter"), which was dated January 20, 2018, as support for his PCR petition. In the letter, Domenices explained he was "writing this letter because [he] heard how the [p]rosecutor in [defendant's] case lied and said the drugs" admitted into evidence at trial belonged to defendant. Domenices's letter stated the drugs belonged to him, not defendant.

Defendant also submitted an undated handwritten letter from Kelly Felippone ("Felippone Letter"), which alleged Felippone witnessed Lopez "with a gun wiping it" and overheard him confess that he shot Humphrey and Vega. In his PCR petition, defendant also included correspondence alleging newly uncovered phone record evidence that "demonstrates Jessica Savage . . . provided false testimony to law enforcement officials and at trial."

On July 19, 2023, the PCR judge heard oral argument on defendant's petition for PCR, and denied defendant's petition without an evidentiary hearing. Relying upon Rule 3:22-5, the PCR court found:

> I find [defendant's] points [regarding improper hearsay, leading a drug trafficking network, and extended term sentence] are substantial[ly] equivalent to the issues previously adjudicated on the merits and, therefore, are precluded in further resolution by the

10

within PCR application citing [State v.] Afanador, 151 N.J. [41 (1991)].

Moreover, the Appellate Division comment[s] there was ample evidence viewed in the light most favorable to the State in which a reasonable juror could find guilt within the various charges beyond a reasonable doubt. For this reason, I find defendant's Supplemental Points [six] and [twelve] substantially equivalent to the issues previously adjudicated on the merits and, therefore, are precluded from further resolution by this PCR application.

To the extent that any claim . . . on [direct] appeal is now reconstituted in this PCR petition as a claim of ineffective assistance of counsel[,]. . . . [s]uch claim is substantiated to a claim raised and adjudicated and is barred under Rule 3:22-5 or Rule 3:22-3 as will be discussed below.

The PCR court found two of PCR counsel's points, eleven of defendant's pro se supplemental points, and defendant's claim of newly discovered evidence regarding Savage's phone records as evidence of her untruthfulness could have been raised on direct appeal but were not. The PCR judge held defendant failed to satisfy the three-prong test pursuant to Rule 3:22-4(a) and none of his points for PCR were within one of the Rule 3:22-2 exceptions. Although the PCR court held defendant's claims were procedurally barred pursuant to Rules 3:22-5 and 3:22-3, it nevertheless substantively addressed his ineffective assistance of counsel claims in the interest of a complete record.

11

The PCR court found defendant failed to establish the necessary prongs of the <u>Strickland-Fritz</u> test for ineffective assistance of counsel based on trial counsel's failure to conduct a pretrial investigation, including the claims regarding Domenices and cross-examination of Savage, because "the State's evidence provided proof beyond a reasonable doubt defendant had co-managed a drug distribution enterprise," defendant's evidence to support these claims was not in the form of an affidavit or certification, and the evidence was dated after the trial.

The PCR court held defendant's ineffective assistance of counsel claim regarding trial counsel's failure to investigate a confidential informant which could have invalidated his search warrant provided no legal basis for PCR and defendant offered "nothing more than the kind of bold assertion that affords no basis for" PCR. In addition, the court considered defendant's ineffective assistance of counsel claims based on his allegations of trial counsel's failure to address DNA evidence, dispute defendant's arrest warrant, and discover Savage's exculpatory statement, which defendant contends was a <u>Brady</u> violation. It found Savage's statement did not constitute a <u>Brady</u> violation because the document was created by a private investigator retained by defendant's co-defendant, not the State. The PCR court found "this clearly

suggests that this information was known to defense counsel prior to trial." The court addressed each of defendant's ineffective assistance of counsel claims and found defendant failed to establish a prima facie case for any of his claims.

The PCR court then held, pursuant to Rule 3:22-10(e)(1)(2), defendant was not entitled to an evidentiary hearing because "[o]ther than vague, old general inspective assertions set forth in his petition, . . . [defendant] does not specifically detail the reasons supported by credible evidence that . . . he alleges ineffective assistance of counsel or how he was prejudiced." The PCR court held he "failed to establish a prima facie showing" of ineffective assistance of counsel

The present appeal followed.

## II.

Through his counsel, defendant makes the following arguments:

> POINT I:  THE PCR JUDGE ERRED IN FINDING THAT TRIAL COUNSEL WAS NOT INEFFECTIVE IN FAILING TO CARRY OUT ADEQUATE INVESTIGATIONS.
>    A. Trial Counsel Was Ineffective Based on His Failure to Carry Out Reasonable Investigations.
>       1. Failure to Engage a DNA Expert.
>       2. Failure to Investigate Phone Records of Jessica Savage.
>       3. Failure to Interview Andres Domenices.
>    B. These Claims Should Not Be Deemed Procedurally Barred.

POINT II: THE PCR COURT ERRED IN FINDING THAT THE PROSECUTOR HAS NOT COMMITTED A BRADY VIOLATION IN FAILING TO PROVIDE THE DEFENSE PRIOR TO TRIAL WITH THE STATEMENT OF JESSICA SAVAGE RECANTING HER PRIOR INCULPATORY STATEMENT TO POLICE.

[(Footnote omitted).]

Defendant also filed a pro se supplemental brief in which he raises the following issues:

SUPPLEMENTAL POINT I. Appellant Counsel [sic] was ineffective for failing to advance the argument that Lieutenant Benito Gonzales falsified evidence, as a result of Lt. Gonzales mendacity [sic], this violated the appellant's [F]ourth, [S]ix, [sic] and [F]ourteenth [A]mendment rights under the United States [C]onstitution.

    a) Appellant Counsel [sic] was ineffective for failing to address the matter of the United States Marshals apprehending him from his home, as there was never a warrant issued for his arrest, violating his constitutional rights under the Fourth [A]mendment.

SUPPLEMENTAL POINT II. Trial Counsel was ineffective for failing to properly investigate a witness, which [sic] had information that should have been provided before the Trial Court. This dereliction of counsel's duty violated his constitutional rights under the Six [sic] and Fourteenth [A]mendment [sic] under the United States Constitution.

    a) P.C.R[.] Counsel was ineffective for failing to advance Appellant's argument that Trial Counsel was ineffective by not properly investigating a

14

witness by the name of Kelly Felippone whose testimony should have been provided before the trial court for the jury to hear. This violated the appellant's constitutional rights under the Six [sic] and the Fourteenth [A]mendment [sic] under the United States Constitution.

When a PCR court does not conduct an evidentiary hearing, we review the denial of that PCR petition de novo. State v. Harris, 181 N.J. 391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). However, a PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

I.   Defendant's Ineffective Assistance of Counsel Claims.

In a PCR petition asserting ineffective assistance of counsel, we are guided by the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), and State v. Fritz, 105 N.J. 42 (1987), which adopted the Strickland standard in New Jersey. See Fritz, 105 N.J. at 58. A defendant will be entitled to PCR on the basis of ineffective assistance of counsel if he shows, by a preponderance of the evidence: (1) "[defendant's] counsel's performance was deficient," and (2) this "deficient performance prejudiced the defense." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). See also State v. Gideon, 244 N.J. 538, 550 (2021).

"An ineffective assistance of counsel claim may occur when counsel fails to conduct an adequate pre-trial investigation." State v. Porter, 216 N.J. 343, 352 (2013). "[C]ounsel has a duty to make 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" State v. Savage, 120 N.J. 594, 618 (1990) (quoting Strickland, 466 U.S. at 691); Harris, 181 N.J. at 474. As to counsel's pre-trial investigation, our inquiry is whether counsel's performance was "reasonable considering all the circumstances." Strickland, 466 U.S. at 688. "'A court evaluating a claim of ineffective assistance of counsel must avoid second-guessing defense counsel's tactical decisions and viewing those decisions under the "distorting effects of hindsight."'" State v. Barclay, 479 N.J. Super. 451, 459 (App. Div. 2024) (quoting State v. Marshall, 148 N.J. 89, 157 (1997) (quoting Strickland, 466 U.S. at 689)), certif. denied, 259 N.J. 306 (2024).

Because we agree with the PCR court that defendant failed to demonstrate how his counsel's performance was deficient, and how counsel's deficiency in retaining experts, completing certain pre-trial investigations, and interviewing a potential defense witness prejudiced his defense, we affirm the PCR court's decision regarding defendant's ineffective assistance of counsel claims. Fritz, 105 N.J. at 52.

First, defendant maintains his trial counsel was ineffective in failing to retain a DNA expert to conduct an independent analysis of defendant's vehicle and test the reliability of the State's DNA experts. However, the PCR court found this claim was "nothing more than a bold speculative assertion" and noted "the Appellate Division decision makes clear, counsel adequately investigated DNA evidence and presented a reasonable defense at trial." Not only does the defendant fail to provide a DNA expert report now to show what evidence the expert's analysis would have revealed, but he also fails to establish how trial counsel's retention of a DNA expert would have led to a different outcome at his trial. See Strickland, 466 U.S. at 694. Further, defendant was not found guilty of first-degree murder, which was the reason the DNA evidence was offered by the State. The charges for which defendant was found guilty did not rely on DNA evidence. It is not reasonably probable that trial counsel's failure to retain a DNA expert would have impacted defendant's overall trial outcome.

Second, defendant claims his trial counsel was ineffective for failing to investigate Savage's phone records and retain an expert. "[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person

making the certification." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant argues Savage's phone records are inconsistent with her in-court testimony, because they establish Savage and Lopez were not speaking on the phone when Savage went into 4th Street House to purchase drugs from Vega.

Although defendant asserts Savage's phone records allegedly would have shown she was not on the phone with Lopez at the time she purchased drugs from Vega—contradicting her trial testimony—he fails to offer any support for this assertion through affidavits or certifications. See Cummings, 321 N.J. Super. at 170. The only support defendant provided was an uncertified copy of Savage's phone records from December 20, 2013, to December 22, 2013.

Even if trial counsel had been deficient in failing to investigate Savage's phone records to determine whether they were consistent with her testimony, meeting prong one of the Strickland-Fritz test, defendant fails to demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Strickland, 466 U.S. at 694, or "that these deficiencies materially contributed to defendant's conviction," Fritz, 105 N.J. at 58. On the contrary, defendant's trial counsel cross-examined both Savage and the police officer offering the phone records testimony, and

defendant failed to show how the phone records would have changed the outcome of his trial.

Third, defendant contends trial counsel was ineffective because of his failure to interview Domenices. Apart from the Domenices Letter, defendant fails to present any support for the assertion that Domenices was the owner of the drugs recovered during the search of 4th Street House. He does not submit an affidavit or certification from Domenices. See Cummings, 321 N.J. Super. at 170. Further, defendant fails to meet the required prongs of the Strickland-Fritz test to establish an ineffective assistance of counsel claim because the Domenices Letter was dated after the trial had concluded, therefore, trial counsel's performance before and during trial could not have been deficient in failing to produce a letter that did not yet exist.

Finally, defendant fails to establish an ineffective assistance of counsel claim regarding trial counsel's failure to interview Felippone and call her as a defense witness at trial. Although defendant provided the PCR court with the Felippone Letter, he fails to present any support for the assertions made in the letter through affidavits or certifications. See Cummings, 321 N.J. Super. at 170. In his pro se brief, defendant claims his PCR counsel was ineffective for failing to advance his argument that trial counsel was ineffective in not properly

investigating Felippone. "PCR counsel must 'advance all of the legitimate arguments requested by the defendant that the record will support,' and 'make the best available arguments in support of them.'" Vanness, 474 N.J. Super. at 626 (internal citations omitted) (first quoting R. 3:22-6(d); and then quoting State v. Rue, 175 N.J. 1, 19 (2002)). However, defendant's argument was baseless, and there was nothing in the PCR record, or the record before us, to support the claim that trial counsel failure to call Felippone as a defense witness would have affected the outcome of the trial.

II.  Defendant's Brady Violation Claims.

In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where [it] is material either to guilt or to punishment, irrespective of the good faith or bad faith of the [State]." 373 U.S. 83, 87 (1963). This rule has been expanded and applies even if a defendant did not specifically request the exculpatory evidence. United States v. Bagley, 473 U.S. 667, 682-83 (1985); see also State v. Martini, 160 N.J. 248, 268-69 (1999). Additionally, "[t]he Brady disclosure rule applies to information of which the prosecution is actually or constructively aware." State v. Nelson, 330 N.J. Super. 206, 213 (App. Div. 2000). To establish a Brady violation, the defense must demonstrate:

(1) the prosecutor failed to disclose the evidence; (2) the evidence was of a favorable character to the defendant; and (3) the evidence was material. Moore v. Illinois, 408 U.S. 786, 794-95 (1972); State v. Brown, 236 N.J. 497, 518 (2019).

There is no dispute that Savage's statement to Lopez's investigator is potentially exculpatory to defendant. However, it is not clear from the record before us whether defendant's trial counsel was in possession of Savage's statement before the jury returned its verdicts, or whether the State was in possession of the statement and failed to disclose it to defendant and his counsel before the verdicts. Defendant correctly argues "it cannot be presumed from the fact that the statement was obtained by counsel for Mr. Lopez that a copy had been provided prior to trial to counsel for Mr. Cortes" because "[c]o-counsel was under no obligation to share the statement with Mr. Cortes's trial attorney."

An evidentiary hearing should be granted by the PCR court if "the defendant establishes a prima facie case in support of PCR"; "the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record"; and "the court determines that an evidentiary hearing is required to resolve the claims asserted." Barclay, 479 N.J. Super. at

461 (quoting Vanness, 474 N.J. Super. at 623) (internal quotation marks omitted); see also R. 3:22-10(b).

Here, an evidentiary hearing would have aided the court in its analysis of whether the State had violated Brady, because the record is not clear as to whether the State had a copy of Savage's recanting statement before she testified at defendant's trial or the jury reached its verdicts. If defendant is able to establish the first element of a Brady violation, that the State suppressed Savage's recanting statement, then he may be able to demonstrate that the State violated Brady because "impeachment evidence, as well as exculpatory evidence, falls within the Brady rule." Nelson, 330 N.J. Super. at 215-16. "[O]ur Supreme Court has stated that '[s]uppression of evidence favorable or helpful to a defendant's cause, even when the evidence concerns only the credibility of a State's witness against defendant, denies him a fair trial and violates due process.'" Id. at 216 (quoting State v. Vigliano, 50 N.J. 51, 60 (1967)). Of course, defendant would still have to prove that the Brady violation impacted the jury's ultimate determination, but we conclude the PCR court abused its discretion in denying defendant an evidentiary hearing based on the assumption that defendant's counsel was in possession of the statement because co-defendant's counsel had obtained it. If defendant's counsel was in possession

of the statement but made a tactical decision to not utilize it, the PCR court must determine whether that trial strategy amounted to effective assistance of counsel.

Affirmed in part, reversed in part, and remanded for an evidentiary hearing for the limited purpose of determining whether the State and defendant's trial counsel were in possession of its witness's recanting statement. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

23